J-S20012-18

2018 PA Super 192

| S.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.W. | : | No. 1748 MDA 2017 |

Appeal from the Order entered October 10, 2017,
in the Court of Common Pleas of Schuylkill County,
Civil Division at No(s):  S-1652-2008.


BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                    **FILED JUNE 29, 2018**

In this matter, we decide whether the trial court afforded sufficient due process to an incarcerated parent who seeks contact with her child.  In reaching our conclusion, we determine what forms of custody incarcerated parents retain under the 2011 revisions to Pennsylvania Custody Law.[1]  And finally, we decide whether the trial court properly analyzed the statutory factors when considering whether to allow an incarcerated parent to retain any form of physical or legal custody.

An incarcerated Mother, S.T., appeals the order denying her request for telephone communication with the parties' nine-year-old daughter. The trial court conducted an *ex parte* custody hearing with Father, R.W., without affording Mother either notice that she could request to be present, or a meaningful opportunity to be heard. The trial court then misapplied the

_____

[1] 23 Pa.C.S.A. §§ 5321 – 5340.

current Custody Law. We hold that the court's procedure constituted a violation of Mother's rights to due process. We vacate the order and remand for a new hearing.

The pertinent facts are these: The parties are parents to a nine-year-old daughter. Father resides with the daughter in Schuylkill County where he is a corrections officer at State Corrections Institute ("SCI") Mahanoy. At the time of the hearing, Mother was incarcerated approximately 90 minutes away at SCI Muncy in Lycoming County.[2] She is a former physician who is serving a prison term of 5 to 10 years for crimes relating to her practice.[3]

Although the exact dates remain somewhat disputed, it is uncontested that Mother had not seen, nor spoken with her daughter since before she began serving her sentence in March 2014. *See* N.T., 8/10/17, at 11-12; *see also* Mother's Brief, at 6. Lately, however, Father testified that he has

_____

[2] We observe from the cover page of her brief that Mother is apparently now an inmate at SCI Cambridge Springs in Crawford County, which is approximately five hours away from the Schulykill County Courthouse.

[3] Mother was convicted of the following crimes: Fraudulent insurance claims (relating to billing services not rendered); Theft by deception (relating to billing for services not rendered); Corrupt organizations relating to billing for services not rendered; Perjury (relating to testimony given in family court matters); Endangering the welfare of children (relating to providing a non-subject seventeen-year-old daughter with Xanax); Drug delivery resulting in death (relating to providing a prescription for pain medication); Sale to dependent person (relating to providing a prescription for pain medication); and Refusal to Keep Records Required by Act.

encouraged and facilitated written correspondence between the child and Mother. *Id.*, at 13. Mother's earliest possible release is March 2019.

In August 2017, Mother filed a "Motion for Contact via Telephone and Correspondence." Upon receiving this pleading, the trial court entered an order scheduling a hearing on the matter. The order notified Mother of the time, place and location of the hearing, but limited Mother's participation in the hearing to a mere written statement. The court ordered Mother to provide in a written statement the following information: a) her place of incarceration; b) her crimes and their circumstances; c) date of incarceration; d) the sentencing orders; e) the earliest possible date of her release; f) her requested involvement regarding frequency, times and circumstances of her requested telephone contact and correspondence; g) her assertions as to how her proposed contact will serve the best interests of the child; and h) any other pertinent material Mother feels will support her request.

Critically, the trial court did not notify Mother that she had a right to request to be present at the hearing. In the interim, the court *sua sponte* suspended Mother's physical custody. The court made no arrangements for her transportation to the hearing, nor for her participation by telephone or video conference. Mother complied with the court's order, and submitted a pre-trial letter with the information the court requested.

On October 10, 2017, the court held what can only be called an *ex parte* hearing, which lasted a matter of minutes judging by the length of the certified transcript. Father's counsel began with a brief summary before eliciting

Father's testimony through direct examination. The court engaged in a brief interrogation of Father before the matter was adjourned. Neither Father's counsel nor the court addressed Mother's statement except to acknowledge its existence. The court did not interview the child.

On the same day, the court issued a brief opinion and order. The court cited to both repealed custody statutes[4] and corresponding case law. **See** Trial Court Opinion ("T.C.O."), 10/10/17, at 2-3. The court also included an analysis of the current custody statute's 16 enumerated factors. **See** 23 Pa.C.S.A. §5328(a). Although neither parent sought to modify legal custody, the court awarded sole legal custody to Father after it determined that Mother was "not able to participate effectively in parenting decisions." **See** T.C.O., at 3. The court denied Mother's request for telephone contact based on Father's testimony that telephone access for prisoners is irregular and that the child would become upset if Mother failed to call at a prearranged time. Although it denied Mother's request for telephone communication, the trial court allowed Mother to continue to send letters to the parties' daughter.

On appeal, Mother presents this question, which we restate verbatim:

> Did the *pro se* Appellant [Mother] suffer extreme prejudice through the deprivation of due process rights when she was prevented from fully participating in a custody hearing where [the trial court] ordered her participation to be limited to entering a pre-hearing written statement to support her "Motion for Contact" with minor child, but permitted [Father] to participate

---

[4] 23 Pa.C.S.A. §§ 5301 -5315.

> with testimony, which resulted in an unfair and unjust ruling and a loss of parental rights?

Mother's Brief, at 4.

Like Father, we construe Mother's presented question as two discrete issues. *See* Father's Brief, at 7. First, Mother challenges the trial court's procedure and substantive decision that resulted in the denial of her request for telephone contact. Second, Mother challenges the procedure and substantive decision that resulted in her loss of shared legal custody.[5]

Our scope and standard of review of child custody orders are settled:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Our review differs when an appellant presents a due process challenge:

---

[5] Although Father's brief is silent as to Mother's loss of shared legal custody, we find Mother preserved this issue when she articulated her "loss of parental rights." *See* Mother's Brief, at 4.

> A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary.

*Commonwealth v. Tejada*, 161 A.3d 313 (Pa. Super 2017) (*quoting Commonwealth v. Smith*, 131 A.3d 467, 472 (Pa. 2015).

**I.**

In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child. *See Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000); *see also* U.S.C.A. Const. Amend. 5, 14; *and see also generally D.P. v. G.J.P.*, 146 A.3d 204 (Pa. 2016).

Due process must be afforded to parents to safeguard these constitutional rights. "Formal *notice and an opportunity to be heard* are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, *or a parent's custody of her child*." *J.M. v. K.W.*, 164 A.3d 1260; 1268 (Pa. Super. 2017) (*en banc*) (*quoting Everett v. Parker*, 889 A.2d 578, 580 (Pa. Super. 2005) (emphasis added). It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Id.*, at n. 5 (*citing Everett v. Parker*, 889 A.2d 578, 580 (Pa. Super. 2005); *see also Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001). "Due process is flexible and calls for such procedural protections as the situation demands."

*See, e.g., In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa. Super. 1996) (citation omitted).

Having established that both formal notice and an opportunity to be heard are due protections, we decide what the situation demands when a parent is incarcerated. In *Vanaman v. Cowgill*, 526 A.2d 1226 (Pa. Super. 1987), we found that the trial court deprived an incarcerated father of his due process rights in a custody hearing initiated by the mother. The father could not attend the hearing while in prison, but the trial court held an *ex parte* hearing anyway. The resulting custody order similarly denied the incarcerated parent any visitation. In defending its decision to proceed with the hearing, the trial court reasoned that father, upon receiving notice of the hearing date, had failed to explain or excuse the absence of counsel or to request a continuance. On appeal, we stated that the trial court should have done more, and we explained why:

> This principle, while perfectly sound in regard to persons at liberty to protect their own interests, requires considerable revision in the context of this and similar cases**. The fact of [a party's] incarceration places an obligation on the court** to safeguard his due process rights, a responsibility here ignored.
>
> Although we have uncovered neither procedural rule nor appellate authority which speaks directly to his issue, lower courts have in the past concluded that not only **notice of a (civil) hearing** is due an imprisoned person, but also specific **advisement of his right to attend**. *See Jones v. Jones,* 1 Pa. D. & C.3d 401 (1974) (citations omitted)[(emphasis added)]. The court in *Jones* prescribed a method of implementing exercise of this right based on the issuance of a writ of *habeas corpus ad testificandum.* […].

The steps listed in **Jones**, although composed in reference to a divorce hearing, are equally applicable here: where the respondent/defendant in an action is incarcerated, notice must contain, as well as the usual particulars of the hearing, the statement that respondent/defendant may, if he wishes to attend, request the court by means of a *habeas* petition and writ to make arrangements for transportation to and presence at the hearing. Such a request must be made within 10 days prior to the scheduled date.

* * *

In situations such as the one before us, not only are the rights of the prisoner/respondent vulnerable to infringement, but those of the child as well since a determination of the child's best interests must have its basis in information. [The father's] rights were clearly ignored; whether his child's have been violated as well remains yet to be seen.

**Vanaman**, 526 A.2d at 1227 (emphasis added). In that case, we remanded for a new custody hearing.

In **Sullivan v. Shaw** 650 A.2d 882, 884 (Pa. Super. 1994), we stated more succinctly that "[i]ncarcerated prisoners who petition the court for visitation rights are entitled to a hearing, to notice of this hearing, and to notice of their right to request that they be present at the hearing, by means of a writ of *habeas corpus ad testificandum*." **Id.** (**Citing Vanaman v. Cowgill**, 526 A.2d. 1226 (Pa. Super. 1987)). This holding has since been codified in both the Pennsylvania Rules of Civil Procedure and in the Schuylkill County Local Rules of Procedure.[6]

_____

[6] The note to Pa.R.C.P. 1930.4(a)("Service of Original Process in Domestic Relations Matters") provides: "Original process served on an incarcerated

- 8 -

In the case at bar, the trial court set a hearing on the issue and made Mother aware of the date, time and location of the hearing. However, the trial court did not provide Mother with notice of her right to request that she be present at the hearing via a writ of *habeas corpus ad testificandum*. The trial court's failure to provide Mother with this notice is reversible error.

We recognize that a trial court may grant or deny a writ for *habeas corpus ad testifcandum* in light of the factors set forth in **Salemo v. Salemo**, 554 A.2d 563 (Pa. Super. 1989). **See** Pa.R.C.P. 1930.4. But whether a writ was appropriate in this case is not an issue. Mother was never told of her

---

person in a domestic relations action must also include notice of any hearing in such action and specific notice of the incarcerated [parent's] right to apply to the court for a writ of *habeas corpus ad testificandum.*"

Schulykill County Local Rule 15.4C ("Involuntary Termination of Parental Rights - Incarcerated Parent")(relating to orphans' court rules) requires the presence of an incarcerated parent at a court proceeding involving the termination of their parental rights. This rule provides:

> Where the natural parent is incarcerated, a petition for involuntary termination of that parent's parental rights must include a statement in the proposed Preliminary Order, submitted with the petition setting the hearing date, that if the natural parent desires to contest the petition, **the parent may do so by requesting the issuance of a writ of habeas corpus ad testificandum.** […]

**Schuylkill County Local Rule 15.4C** (emphasis added). Notably, this procedure mirrors the service procedure provided Pa.R.C.P. 1930.4(a). Although this local rule applies specifically to termination of parental rights cases, we see no reason to distinguish the due process rights of incarcerated parents in those cases from parents involved in custody actions.

legal right to seek such a writ. Additionally, as we discuss below, the trial court also failed to provide Mother with a meaningful opportunity to be heard.

## II.

"Due process is flexible and calls for such procedural protections as the situation demands." ***Sullivan,*** 650 A.2d at 884 (***citing Mathews v. Eldridge***, 424 U.S. 319, 334 (1976). "***Mathews*** allows the government to ***tailor*** the amount of procedural protection to the situation by ***balancing*** the marginal value of additional protections against the marginal costs such additional protections would impose on the government." ***Id.*** (Emphasis added).

In ***Sullivan***, a father who was incarcerated near Pittsburgh sought visitation with his daughter who lived in Philadelphia. The trial court properly provided him a hearing, notice of the hearing, and notice of his right to request be at the hearing. ***Id***. When authorities failed to produce the father, the trial court conducted the hearing without him. ***Id.*** Although we found the court's decision erroneous, we articulated that incarcerated parents did not have an absolute right to be physically present at the hearing. ***Id.*** In other words, the court does not have to grant to writ of ***habeas corpus ad testificandum***, but an incarcerated parent must still be provided an opportunity to be heard.

In 1994, we posited that transporting an incarcerated parent across the state imposed a considerable burden upon the Commonwealth. One solution, we surmised at that time, was to allow the incarcerated parent to file "an informal brief with the trial court" where the prisoner-parent could offer her "solution to the problems of visitation." ***Id.***, at 885. Then if the prisoner-

parent could offer no reasonable means of overcoming the "obstacles of visitation," we reasoned that the trial could dismiss the petition. *Id.* We concluded that "allowing the trial court to make such a preliminary determination upon the prisoner's written submissions best conserved the Commonwealth's resources without increasing the risk of erroneous deprivation." *Id.* The "informal brief" in *Sullivan* is substantially the same as the "written statement" the trial court allowed in the instant case.

But times have changed. *Sullivan,* a case nearly a quarter-century old, predates revisions to both the rules of civil procedure and the substantive custody law. Now we must recalibrate the due process balancing and refit the tailoring of procedural protections. Two and a half decades and a technological revolution after we decided *Sullivan*, communication via telephone and video conferencing is considerably less expensive and far more readily accessible. The choice is no longer between physical transportation and exorbitant long distance rates across the state. We cannot say, with current technology, that due process is satisfied by allowing an "informal brief" or "written statement" from an incarcerated parent. In incarceration cases, telephone or video testimony should now be the practice standard, not the exception.

Notably, *Sullivan* was decided one month before the adoption of Pennsylvania Rule of Civil Procedure 1930.3. Rule 1930.3 gives courts a means to accommodate any party or witness who may not be available to attend a hearing in person. The rule provides: "With the approval of the court

upon good cause shown, a party or witness may be deposed or testify by telephone, audiovisual or other electronic means at a designated location in all domestic relations matters." Pa.R.C.P. 1930.3. Neither telephonic, nor audiovisual, nor electronic communication was even mentioned by the court in *Sullivan*. Rule 1930.3 now provides courts with a previously unavailable option.

The outdated solution in *Sullivan* is further magnified by the changes our legislature made to the Custody Law. The "informal brief" allowed in *Sullivan* is all the more problematic because it intertwined proper procedural due process considerations with the repealed substantive custody considerations. *Sullivan*, 650 A.2d at 885.

The informal pre-trial brief sought to kill two birds with one stone: procedural matters and substantive matters. Procedurally speaking, the brief satisfied the due process balancing because it provided the incarcerated parent with the opportunity to be heard while simultaneously eliminating transportation costs – as we noted directly above, those burdens on the Commonwealth have now been virtually negated. Substantively speaking, the brief outlined the reasons why the obstacle of incarceration could be overcome (i.e., why visitation is in the child's best interests). In other words, the "informal brief solution" imposed on a petitioning incarcerated parent the burden to make a *prima facie* showing that visitation would be feasible and in the child's best interests **before** the parent was entitled to a full custody hearing. Whatever the statutory basis was for this holding – presumably §

5302 ("Visitation") – that basis has been repealed by our legislature. Nothing in our redrafted Custody Law allows for this procedure.

An "informal brief" or "written statement" submitted prior to the trial cannot possibly equate a meaningful opportunity to be heard under the current state of our substantive and procedural laws.

> Both notice and an **opportunity to be heard must be afforded at a meaningful time in a meaningful manner**. As previous panels have explained: notice in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter advocate its position, ultimately **exposing all relevant factors** from which the finder of fact may make an informed judgment.

**Everett v. Parker**, 889 A.2d 578, 580 (Pa. Super. 2005) (internal citations and quotation marks omitted) (emphasis added). Recently, we confirmed procedural due process requires not only adequate notice and an opportunity to be heard, but also **"the chance to defend oneself** before a fair and impartial tribunal having jurisdiction over the case.'" **J.M. v. K.W.**, 164 A.3d 1260, n. 5 (Pa. Super. 2017) (*en banc*) (**citing Everett**, 889 A.2d at 580) (emphasis added).

Due process mandates that an incarcerated parent have a meaningful opportunity to expose **all** the relevant factors in a custody analysis. Under the revised Custody Law, incarcerated parents do not need to make a *prima facie* showing that contact with the child is feasible based on those custody factors relating to logistics. Parties cannot fully address all the relevant factors if trial courts preliminarily disqualify them on certain factors before a hearing

- 13 -

even occurs. Additionally, parties cannot expose all the relevant factors if they cannot advocate for themselves in real time, i.e., cross-examine witnesses of the other party and respond to arguments.

In the instant matter, the trial court's procedure afforded Mother no meaningful opportunity to advocate for herself during the hearing. She could not respond, nor cross-examine Father's points. She could not call witnesses, nor introduce evidence. She could not make objections.

For illustration, the trial court accepted all of Father's testimony regarding his employment experience with prisoner visitation at SCI Mahanoy – namely its unsavory characteristics and the irregularity of telephone access. Because of the court's limiting order, Mother did not have an opportunity to counter Father's assertions and describe the visitation procedures and conditions at her facility. We cannot say the defect lies with trial court's scheduling order, which outlined for Mother what information she should submit to the court. Nor can we blame Mother for a written statement lacking in this detail. No matter how specific Mother made – or could have made – her pre-trial written statement, she could never fully defend her position if Father opposed it. Moreover, she could never fully advocate for her position if she could not oppose Father's. But now that an incarcerated parent has the ability to advocate in real time, at a comparatively minimal cost on the courts, we conclude that the same is necessary to guarantee a meaningful opportunity to be heard.

We recognize that our decision may involve practical and logistical concerns. For example, a prisoner's appearance may be delayed or cut short due to the availability of prison staff or equipment – though we note that our courts are already making these accommodations for prisoners in criminal and juvenile proceedings. Whatever inconvenience this decision may cause, it is negligible compared to the logistical burdens the trial courts faced in the time of **Sullivan.**

### III.

The changes in our substantive custody laws mandate that an incarcerated parent be given more say than a letter to the court. Unlike when we decided **Sullivan**, today we do not consider, as a threshold question, the vague notion whether visitation with an incarcerated parent would be "impractical" or in the child's "best interests." **See Sullivan,** 650 A.2d at 885.

Instead, the current Custody Law requires a court to consider a specific list of 16 factors when "ordering **any form of custody**." **S.W.D. v. S.A.R.,** 96 A.3d. 396, 401 (Pa. Super 2014) (emphasis added); **see also** 23 Pa.C.S.A. § 5328(a). We have interpreted "form of custody" to mean the seven types of custody listed at 23 Pa.C.S.A. § 5323(a): (1) shared physical custody; (2) primary physical custody; (3) partial physical custody; (4) sole physical custody; (5) supervised physical custody; (6) shared legal custody; and (7) sole legal custody. **Id.** at 402; **see also** 23 Pa.C.S.A. § 5323.

Our Custody Law no longer provides a statutory basis to seek "visitation."[7] We must treat Mother's "Motion for Contact via Telephone and Correspondence" as a petition for modification seeking supervised physical custody.

First, we note that custody courts are flexible and treat certain petitions (particularly *pro se* petitions and petitions for special relief) as modification petitions even though the petitions do not strictly comply with Pa.R.C.P. 1915.15 (relating to procedure to modify custody). Such is the case here.

In this case, the parents had a custody order prior to Mother's incarceration. Her incarceration caused a *de facto* modification of her physical custody. She seeks to modify the prior custody order so as to align it with the reality that she is now incarcerated. In this respect, Mother's petition is no different than a typical modification petition. A parent often petitions for modification only to formalize in a court order the reality of the current custody arrangement. The petitioning parent argues that the operating custody order no longer reflects the status quo and seeks to protect that status quo with all the benefits that come with a court order. Mother, seeking contact with her daughter, similarly seeks to have a new custody order meet the realities of the parties' current living situation. The difference between Mother and a typical parent seeking modification is the availability of remedies.

---

[7] **See** 23 Pa.C.S.A. § 5302, **repealed**: "'Visitation.' The right to visit a child."

Second, we conclude that the type of custody Mother seeks in this case fits the definition set forth in the Custody Law for "supervised physical custody." 23 Pa.C.S.A. § 5322 (b). This term is statutorily defined as: "Custodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the ***interaction*** between the child and the individual with those rights." ***Id.*** (Emphasis added). Thus, incarcerated parents who seek some form of contact with their children – whether it be a request that the children visit them or otherwise – are seeking an award of "supervised physical custody" as defined under § 5323.[8] In this case, Mother seeks written correspondence and telephone communication. She wants to interact with her daughter. Indeed, the trial court's custody order even authorized Father to screen Mother's letters to their daughter.

We observe that our legislature surely anticipated custody petitions of incarcerated parents when it included § 5329(b) in the current Custody Law. This provision provides: "No court shall award ***custody, partial custody or supervised physical custody*** to a parent who has been convicted of murder under 18 Pa.C.S. § 2502(a) of the other parent of the child who is subject of the order unless the child is of suitable age and consents to the order." 23 Pa.C.S.A. § 5329(b) (emphasis added). This provision must apply in both situations where the parent is presently incarcerated, as well as those extraordinarily rare situations where a parent, convicted of murdering the

---

[8] "Partial physical custody" and "shared physical custody" both refer to the actual physical possession of the child. ***See*** 23 Pa.C.S.A. § 5322(b).

other parent, is released during the child's minority. Naturally, the provision is silent to whether the convicted parent can obtain visitation of the child, because visitation is no longer an available remedy anywhere in our custody law.

Having established that incarcerated parents seeking contact with their children are seeking "a form of custody," i.e., supervised physical custody via either an original complaint or a modification petition, the custody court must consider the custody factors under § 5328(a) when deciding these prison cases.

Proper procedure mandates all custody requests be assessed under the current Custody Law's enumerated factors. We believe this method best fulfills the statutory mandate as well as best protects the fundamental right to parent one's child. Mother's request is no different.

Section 5328(a) provides: "In ordering **any form of custody**, the court shall determine the best interest of the child **by considering all relevant factors**, giving weighted consideration to those factors which affect the safety of the child, including [Factors (1)-(15)][9] and **(16) Any other relevant**

_____

[9] (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and

which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

*factor*." 23 Pa.C.S.A. § 5328(a) (emphasis added). In its wisdom, our legislature left room for "any other relevant factor," recognizing that certain situations would require consideration of additional information unique to the parties. Recently, we noted several relevant factors that courts employ in cases with an incarcerated parent.

In *M.G. v. L.D.* 155 A.3d 1083, 1093 (Pa. Super. 2017), we found the trial court should have considered factors unique to prison cases which were previously delineated in *Etter v. Rose*, 684 A.2d 1092, 1093 (Pa. Super. 1996)."

> [I]n *Etter v. Rose*, the Superior Court recognized some of the factors to be considered in deciding [custody cases] where the parent is incarcerated:
>
> (1) age of the child;
>
> (2) distance and hardship to the child in traveling to the visitation site;
>
> (3) the type of supervision at the visit;
>
> (4) identification of the person(s) transporting the child and by what means;
>
> (5) the effect on the child both physically and emotionally;

---

> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.

(6) whether the parent has and does exhibit a genuine interest in the child; and

(7) whether reasonable contacts were maintained in the past.

***M.G. v. L.D.***, 155 A.3d at 1094 (***quoting D.R.C. v. J.A.Z.***, 31 A. 3d 677, 687 (Pa. 2011)).[10]  We also noted that our Supreme Court included another relevant consideration, namely:

(8) the nature of the criminal conduct that culminated in the parent's incarceration, regardless of whether that incarceration is the result of a crime enumerated in [section 5329(b)].

***M.G. v. L.D.***, 155 A.3d at 1094 (numeration original).  Although ***Etter*** was decided prior to the amendments to our current Custody Law, in ***M.G.*** we determined they still played a role in deciding prison cases.

***M.G.*** involved an incarcerated Mother's request to see, or to at least have telephone contact with her 12-year-old daughter.[11]  Specifically, the trial

---

[10] Although the ***D.R.C.*** decision was issued in 2011 – after the adoption of the current Custody Law – our Supreme Court was tasked with interpreting the since-repealed 23 PA.C.S.A. § 5303 (Award of Custody, Partial Custody or Visitation).  In doing so, the Supreme Court approved the ***Etter*** factors.  In ***M.G. v. L.D.***, we noted Supreme Court's approval of the ***Etter*** factors and reaffirmed their relevance under the current Custody Law.

We also note that 23 Pa.C.S.A. §§ 5329(c) ("Initial Evaluation") and (d) ("Counseling") apply only to the ***post-release*** cases, not when a parent is presently incarcerated.  ***M.G.***, 155 A.3d at 1093-1094.

[11] Critically, we note that although the trial court in ***M.G.*** failed to consider the relevant factors, it properly conducted a full custody trial where the incarcerated mother participated in the hearing.

- 21 -

court did not consider the emotional effect the contact would have on the child, nor the travel logistics and supervision during the visit. *Id.* Likewise, the trial court did not determine whether the mother's interest in expanding contact with her daughter was genuine. The court also failed to consider the nature of the mother's criminal conduct and its effect upon her daughter. *Id.,* at 1094-1095.

Without specifically stating so, in *M.G.* we acknowledged the *Etter* factors are now assimilated into § 5328(a) analysis under § 5328(a)(16). *See P.J.P. v. M.M.*, 2018 Pa. Super. 100, 2018 WL 1979832 (Pa. Super. April 27, 2018) (holding that the shared custody factors set forth in *Wiseman v. Wall*, 718 A.2d 844 (Pa. Super. 1998), which predated the 2011 amendments to the Custody Law, assimilated into the custody factors set forth in 23 Pa.C.S.A. § 5328(a)).

We acknowledge that not every § 5328(a) factor will necessarily apply. "[W]here, as here, one parent is incarcerated and will remain imprisoned for an extended period, the applicability of several of the enumerated [§ 5328(a)] statutory factors is questionable." *M.G.,* 155 A.3d at 1093.

Some § 5328(a) factors are largely inapplicable to these cases. For example, perhaps § 5328(a)(5) ("The availability of extended family") has less value than other factors when determining whether an incarcerated parent should be able to speak to her daughter. But, of course this factor might be relevant if extended family can provide transportation or financial resources to allow telephone or virtual visitation.

Some factors overlap. Compare: § 5328(a)(11)("The proximity of the residences of the parties") with *Etter* Factor 2 ("The distance and hardship to the child in traveling to the visitation site.") Most of the *Etter* factors have a similar § 5328(a) counterpart.

In the case at hand, the trial court first applied the former law and then misapplied the current law. We observe the trial court relied upon, at least in part, the former custody statute, which was repealed in 2011. *See* T.C.O., at 2-3.[12] Moreover, to the extent that the trial court conducted a proper § 5328(a) analysis, it failed to contemplate the relevant *Etter* factors.

The court did apply § 5328(a)(11)(relating to the proximity of the parties' residences) almost as if it was the second *Etter* factor (the distance to the prison). The court found: "It is approximately 85 miles from Father's residence to SCI-Muncy which is a driving time of 1 ½ hours each way." Where we believe the trial court erred, however, was in failing to consider the other *Etter* factors.[13] For example, the court did not consider the emotional or physical effect the requested telephone contact would have on the child. The court did not consider whether Mother has exhibited a genuine interest in

_____

[12] The trial court cites to 23 Pa.C.S.A. § 5302 and to our 1991 case *Warren v. Rickabaugh*, 600 A.2d 218, wherein we held: "In custody disputes, the controlling question and paramount concern of the Court is the best interests of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well-being."

[13] We recognize that some *Etter* factors may also be inapplicable given Mother's request was only for telephone contact. She did not seek to have the child transported to her. But even under this narrower custody analysis, the court still failed to make the proper considerations.

the child. The trial court did not consider whether reasonable contacts were maintained in the past.

*Etter* aside, the trial court erred by not interviewing the child to consider her preference, per § 5328(a)(7). Although the discretion remains exclusively with the trial court, a child's well-reasoned preference, based on her age and judgment, could carry more weight in an incarceration case than it might otherwise would have.

Although we find that the *Etter* factors have assimilated into our current Custody Law, the presumption set forth in *Etter* did not survive the amendments to the custody statutes. Father cites *Etter* for his argument that incarceration alone "is a basis for creation of a presumption, to be rebutted by the prisoner parent, that such visitation is not in the best interest of the child." *See* Father's Brief, at 11; *see also Etter v. Rose*, 684 A.2d 1092, 1093 (Pa. Super. 1996).

The legislature, in amending our Custody Law, provided no such presumption in incarceration cases. [14] Our legislature contemplated when a presumption would arise, as well as how to treat parents' criminal histories; it provided no such presumption against incarcerated parents. Indeed, not only is this presumption absent from our statutes, but any such presumption would

_____

[14] *See* 23 Pa.C.S.A. § 5327 ("Presumption in cases concerning primary physical custody"); *see also* §§ 5329 ("Consideration of criminal conviction"); 5329.1 ("Consideration of child abuse and involvement with protective services"); 5330 ("Consideration of a criminal charge"). The legislature did not even insert a presumption in a case where one parent has murdered the other parent. *See* §5329(b).

run afoul of the advances our courts have made in proceedings conducted under the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq*. Our Judicial Dependency Court Benchbook references the Pennsylvania State Roundtable Dependent Children of Incarcerated Parents 2013 Workgroup Report. The report states:

> [I]n most cases, children benefit from visitation and contact with a parent who is incarcerated. Children feel enormous grief and loss when they are unable to maintain contact with a parent. It is almost the same when a parent has died. Children also worry about a parent that they cannot see or talk to on a regular basis. [...] Visitation and contact can reduce some of their worries and sad feelings.

*Id.* The Benchbook outlines the following best practices in dependency court:

### Best Practice – Visits in Local Jails and Prisons

> [...] Indeed, many counties have worked with their local jails and created innovative practices, including child-friendly visitation space, that support meaningful parent/child visitation. Some examples include Adams, Allegheny, Blair, Crawford and Westmoreland counties. [...]

*Id.*, at § 8.4.

We fail to see why the children of incarcerated parents should be treated differently depending on whether they are the subject of dependency proceedings or custody proceedings. Both the Juvenile Act and the Custody Law serve the "best interests" of children.

Because the trial court failed to consider the relevant ***Etter*** considerations unique to prison cases under § 5328(a)(16), the trial court erroneously determined the extent of Mother's "supervised physical custody" without proper consideration of "all relevant factors."

**IV.**

Finally we must address Mother's claim that the trial court process constituted a "loss of her parental rights." Here, when Mother filed for modification of supervised physical custody, the trial court awarded Father sole legal custody. The trial court's legal custody decision similarly consists of procedural and substantive faults.

If a party requests modification of any form of custody, the decision of whether to modify either legal custody or physical custody should be made on a case by case basis under the § 5328(a) factors discussed above. We cannot determine from the *ex parte* hearing whether Mother should retain her shared legal custody, but we acknowledge that legal custody rights of incarcerated parents do not vanish upon their incarceration. Indeed, the trial court acknowledged Mother retained shared legal custody when scheduling the custody hearing, but then the court deprived her of those rights in its final order.

In doing so, we note that the trial court again applied the repealed custody statute. **See** T.C.O., at 2-3. Similar to the analysis above, "legal custody" is a "form of custody." **See** 23 Pa.C.S.A. §5322. As such, an award or modification of legal custody necessarily requires analysis of the § 5328(a) custody factors. The trial court relied on legal custody considerations set forth in earlier case law that have been assimilated under § 5328(a).

Before the revisions to the Custody Law, we held that when determining whether to award shared legal custody, the trial court must consider the following legal custody factors:

(1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and be able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; (4) whether a minimal degree of cooperation between the parents is possible.

*See, e.g., Yates v. Yates*, 963 A.2d 535 (Pa. Super. 2008); *see also Bernard v. Green*, 602 A.2d 1380, 1381 (Pa. Super. 1990) (*quoting In re Wesley J.K.,* 445 A.2d 1243, 1249 (Pa. Super. 1982). We hold that these legal custody factors have similarly been assimilated into the custody factors set forth in 23 Pa.C.S.A. § 5328(a). *See P.J.P. v. M.M.*, *supra,* 2018 Pa. Super. 100, 2018 WL 1979832 (Pa. Super. April 27, 2018).[15]

Unlike the *Etter* factors, where several unique considerations – specific to prison incarceration cases – are now considered under § 5328(a)(16)'s

---

[15] As we noted in *P.J.P.*, prior custody case law still may retain persuasive value. In the past, we stated that "the absence in the record of animosity of one parent toward the other parent strengthens the case for shared custody." *See, e.g., In re Wesley J.K.* 445 A.2d at 1249. Nothing we have said today detracts from this holding, as the holding speaks to the weight of the factors. We only clarify the factors themselves. Thus, it could be very reasonable for a trial court – finding no record of animosity – to award one parent primary physical custody, while opting to keep legal custody shared. So long as both analyses involve the § 5328(a) factors, the trial court is free to assign the same factors different weight when awarding first physical custody, then legal custody.

catchall provision, here, these four "legal custody factors" from our case law have been entirely consumed by § 5328(a). For instance, the legislature expertly and purposely instructed trial courts to consider many more specifics than just "fitness" generally. Regarding the former "Legal Factor 1" (whether the parents are fit and willing to provide love and care), the current analysis under § 5328(a) encompasses the question of "fitness" in the following provisions: § 5328(a)(2)(relating to past abuse); (a)(2.1) (relating to past crimes); (a)(3)(relating to parental duties); (a)(9)(relating to providing a loving relationship); (a)(10)(relating to the willing to attend to the child); (a)(12)(relating to the ability to make appropriate child care arrangements); (a)(14)(relating to the history of household drug abuse); and (a)(15)(relating to the mental and physical condition of the household).

Returning now to the instant case, the trial court ruled that Mother could not share legal custody because she was "not able to participate effectively in parenting decisions." **See** T.C.O., at 3. This conclusion is seemingly the product of no analysis, old or new. The trial court clearly thought it was bound to the prior legal custody factors. But to the extent the trial court's § 5328(a) findings could be transplanted in a proper legal custody analysis, we reiterate that Mother did not have notice, nor an opportunity to be heard on this issue either.

Because the court similarly deprived Mother the opportunity to be heard on legal custody, we must conclude that the court erred. On remand, we direct

the trial court to apply the proper statute in determining whether Father should have sole legal custody of the parties' daughter.

Although, at first glance, it might appear that the trial court complied with our current custody laws by listing the 16 factors in its opinion, we must reverse the trial court's order, in this prison custody case, for several reasons. First, because Mother was not notified of her right to request to be present, Mother's was deprived her right to due process. Additionally, Mother was deprived her right to have her modification petition adjudicated under the current Custody Law's analyses for physical and legal custody. Therefore, we vacate the trial court's order in this matter and remand for a new hearing.

Order vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2018