J-A29020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DARA PELUSO-HOFFMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON LAUVER | : | |
| | : | |
| Appellant | : | No. 758 WDA 2024 |

Appeal from the Order Entered June 7, 2024
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  F.D. 22-009245-008

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: February 4, 2025**

Jason Lauver ("Father") appeals from the final custody order that modified the existing custody order with respect to his son, M.L. (born in 2008), and daughter, E.L. (born in 2014) (collectively, "the children").  We vacate and remand for further proceedings.

We summarize the relevant factual and procedural history of this matter as gleaned from the certified record.  The children were born during the marriage of Father and Dara Peluso-Hoffman ("Mother").  In October of 2020, Mother relocated with the children from the marital home in King George County, Virginia, where the family had resided for an unspecified period of time, to Allegheny County, Pennsylvania.  Mother filed actions in divorce and child custody in the Circuit Court for King George County, Virginia, which ultimately issued a divorce decree and final custody order on September 19, 2022.  Soon thereafter, Mother registered that custody order in the Allegheny

Court of Common Pleas, and the trial court filed it as a foreign judgment on November 30, 2022 ("existing custody order").[1]  *See* 23 Pa.C.S.A. § 5445 (Registration of child custody determination).

Since December 2022, the parties have engaged in protracted custody litigation in Allegheny County.  Our review of the pleadings reveals, in part, cross claims for modification of the existing custody order with respect to both legal and physical custody based upon allegations of, *inter alia*, parental alienation and conflicts concerning the children's medical diagnoses and corresponding treatments.[2]  Mother also filed a motion to find Father in contempt of court.

_____

[1] The existing custody order awarded the parties shared legal custody, "with physical custody to Mother."  Existing Custody Order, 11/30/22, at ¶ 9(a). The order awarded Father partial physical custody, as follows.

    i.     During the school year, on two weekends monthly of his choice.  One weekend will always be any three-day weekend in the month if the children are off from school on a Friday or Monday.

    ii.    Holidays shall be alternated between the parties, except for Spring Break, which shall always be Father's holiday.

    iii.   Summer – Father shall have the children all summer, except for 2 weeks that Mother chooses by April 1st of each year.

*Id*. at ¶ 9(b)-(c).  The order provided that the parties "will split" transporting the children to custody exchanges and will "meet in Berkeley Springs, West Virginia" to exchange the children.  *Id*. at ¶ 9(c).

[2] Mother asserted that M.L. suffers from a myriad of medical conditions, including, but not limited to, generalized anxiety disorder, attention deficit
*(Footnote Continued Next Page)*

In her pretrial statement, Mother requested an award of sole legal custody with respect to the children's medical and educational needs. In addition, Mother requested that Father's physical custody award be reduced, in part, to one weekend per month of his choice which shall be based upon consideration of the children's school and extracurricular activities and, during the summer, that he shares physical custody on a rotating biweekly basis. *See* Mother's Pretrial Statement, 5/2/24, at 29.

In his pretrial statement, Father requested sole legal custody. In addition, Father requested primary physical custody during the school year with Mother having partial physical custody on alternating weekends. With respect to the children's summer vacation, Father agreed, in essence, with Mother's request. *See* Father's Amended Pretrial Statement, 5/2/24, at 32. However, Father requested that, if the trial court did not award him primary physical custody during the school year, that his physical custody include "exclusive holidays/breaks, and the entire summer, less two weeks at the end of the summer break for Mother." *Id*.

---

hyperactivity disorder, and autism. M.L. is under the care of numerous specialists located in Pennsylvania, and he attends mental health counseling. Likewise, Mother asserted that E.L. attends counseling, and she has an individualized education plan in school. *See* Mother's Pretrial Statement, 5/2/24, at 3. Father attributed the children's need for counseling, in part, "to Mother's negative portrayal of [him], to such an extent the children must have [counseling] sessions prior to going into [his] custody." Father's Amended Pretrial Statement, 6/3/24, at 7.

- 3 -

Prior to the custody trial being scheduled in the underlying matter, the parties filed multiple petitions for special relief concerning ancillary matters, which resulted in the trial court issuing several interim orders that modified the existing custody order. For instance, the interim orders: set forth the time and place for the children's custody exchanges in Berkeley Springs, West Virginia; prohibited the parties from disparaging one another to the children; and provided the dates for Father's primary physical custody in the summer of 2023, as well as awarding Mother one week of custody that summer. In addition, the court specified that in the summer of 2023, the parties "shall not enroll, subscribe, or take the children to any new medical or mental health treatment providers without the written consent" of the noncustodial parent, and, further, that Father "shall ensure the children's attendance for all currently scheduled" medical appointments. Interim Order, 6/28/23, ¶ 3(a)-(b). On April 3, 2023, and October 30, 2023, the trial court held *pro forma* judicial conciliations for the purpose of settling the parties' disputes, and it ordered co-parenting counseling. Soon after the first conciliation, the trial court ordered a "full custody evaluation" and "psych evaluations" in the case. Orders, 4/4/23 and 4/21/23.

Ultimately, on February 12, 2024, the court issued an order upon consent of the parties, which provided, in part, as follows.

> 1. Mother's contempt petition and Father's response to the same, which were presented for consideration at the second judicial conciliation in this matter . . . shall be consolidated for trial. . . .

- 4 -

2. The parties shall be scheduled for a three (3) day custody trial to address Mother's custody modification petition, Father's modification petition, Mother's contempt petition, and Father's response to the same, by separate order of court, no sooner than May of 2024. . . .

3. A pre-trial conference shall be held approximately one (1) month prior to trial.

4. Mother shall make the children available for an in-person interview . . . by this court on a time and date issued by separate order, approximately one month prior to trial.

Consent Order, 2/12/24 (unnecessary capitalization omitted).[3]

The trial court subsequently scheduled a pretrial conference and directed, in part, that "[i]f the parties are unable to reach a settlement at the pre[]trial conference, this matter shall be addressed at a three[-]day custody trial before the undersigned on the 4th[, 5th, and 7th] day[s] of June, 2024 . . . ." Order, 2/22/24. This order also provided that, no later than seven days before the pretrial conference, the parties were to file comprehensive pretrial statements including findings of fact in support of each of the sixteen 23 Pa.C.S.A. § 5328(a) custody factors. *See id*. at ¶¶ 1, 4. The trial court held the pretrial conference on May 6, 2024, during which it interviewed the

_____

[3] We glean from the record that the full custody evaluation was completed by the time the trial court entered the February 12, 2024 order. However, the custody evaluation is not a part of the certified record. The record does not reveal whether the parties obtained court-ordered psychological evaluations.

children *in camera* in the presence of the parties' counsel.[4]  The notes of testimony of the children's interviews on this date are included in the certified record.

Thereafter, on June 4, 2024, the parties appeared in court for the scheduled custody trial.  On that date, the trial court again interviewed M.L. *in camera*, but not E.L.  The certified record also includes the notes of testimony of this interview, at the outset of which the trial court stated to M.L., "I'm making a decision here today.  That's it; we're not coming back to court.  The trigger—I'm pulling the trigger; okay?  . . ."[5]  N.T., 6/4/24, at 2.

It is undisputed that the scheduled custody trial did not occur, and no further record was created on June 4, 2024.  Nonetheless, the trial court entered a final custody order on June 7, 2024, which maintained the existing award of shared legal custody to the parties, and the award of primary physical custody to Mother subject to Father's custody time.  The final custody order also provided, in part, as follows:

> a.    Father shall exercise custody one (1) weekend per month with M.L. of Father's choice.  M.L. shall choose the other weekend [*sic*] if it does not conflict with his extracurriculars.  School and extracurricular activities schedules shall be given deference.
>
> b.    Father shall exercise two (2) weekends per month with E.L. of Father's choice.  At least one of which shall fall on the same

---

[4] The record does not indicate whether the trial court *sua sponte* interviewed the children.

[5] The court focused the interview on explaining to M.L. why he may benefit from attending family therapy with Father.  **See** N.T., 6/4/24, at 2-4.

weekend that he is also exercising custody of M.L.  Father shall likewise consider E.L.'s school and extracurricular activity schedule and shall give deference to same.

* * * *

f.      Father shall exercise custody on a two (2) week rotation during the summer[, b]eginning at 7 PM on the Friday of Father's Day weekend, so long as the children are out of school.  Father shall **always** exercise custody for the first two (2) weeks.  Then Mother shall exercise the next two weeks.  This shall rotate every 2 weeks thereafter. . . .  Mother shall always have the **last seven (7) days** before the school year begins. . . .

Final Custody Order, 6/7/24, at ¶ 17(a), (b), (f) (emphasis in original).

In total, the final custody order spanned thirty-seven paragraphs, including, *inter alia*: (1) setting forth a holiday schedule; (2) requiring that Father and M.L. "engage a family therapist;" and (3) requiring that the parties utilize a co-parent coordinator "to assist them with disputes such as scheduling, communication, and alternative dispute resolution," and that the parties attempt to resolve any dispute with the coordinator "before litigating the matter before this [c]ourt."  *Id*. at ¶¶ 17(g)-(i), (m), 32-33, 35.

Father filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  The trial court filed its Rule 1925(a) opinion on July 30, 2024.  At no time prior to, or after, expiration of the appeal period did the trial court set forth its assessment of the sixteen custody factors delineated in section 5328(a).

On appeal, Father presents the following issues for our review:

1. Whether the trial court erred as a matter of law and/or abused its discretion by refusing to proceed with a scheduled trial or

- 7 -

create a record prior to entering an order for custody without consent to [Father] as same violated [Father]'s constitutional right to due process and right to meaningfully be heard prior to the entry of the custody order?

2. Whether the trial court erred as a matter of law and/or abused its discretion in entering an order for custody without a hearing?

3. Whether the trial court erred as a matter of law and/or abused its discretion in failing to analyze the factors set forth in 23 Pa.C.S.A. § 5328(a) prior to entry of an order custody?

Father's Brief at 11 (issues reordered).

Our scope and standard of review of child custody orders are well-settled:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

In his first two issues, Father presents a due process challenge in relation to the final custody order. "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018).

In custody hearings, parents have at stake certain fundamental rights, including the right to make decisions concerning the care, custody, and control of their child; therefore, due process must be afforded to parents to safeguard these constitutional rights. *See id*. Consequently, formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as a parent's custody of their child. *See id*. at 1161.

Here, the trial court stated that, following the *in camera* interview of M.L. on June 4, 2024, the parties engaged in off-the-record vigorous settlement negotiations that lasted the entire day. *See* Trial Court Opinion, 7/30/24, at 2. The trial court further stated that its final custody order was "largely consistent with [what] the parties agreed to in our discussions." *Id*. However, the trial court confirmed that "the record does not contain any explicit agreement by the parties to the final order." *Id*. (capitalization omitted). The trial court further confirmed that it "entered the [final custody] order without [providing a section 5328(a)] analysis because [the court] believed it was tacitly, if not explicitly, consented to by the parties." *Id*. The trial court ultimately conceded that this Court "may see the need to remand this matter for further proceedings." *Id*.

To the extent that the trial court has characterized the subject order as being grounded in consent, the order is titled "Final Custody Order" and not "Consent Order." Furthermore, the text of the order does not expressly

provide that it was agreed upon by the parties or that it was entered into by the parties following court-supervised negotiations instead of a custody trial. As discussed further *infra*, these irregularities in the procedure of this case raise significant questions regarding the sufficiency of the record evidence.

Turning to Father's arguments, in his first two issues, he contends that the court violated his guarantee of due process under the Fourteenth Amendment to the United States Constitution by entering the final custody order prior to an evidentiary hearing and without convening a custody trial, so as to provide Father an opportunity to be heard and to present evidence. Father specifically asserts that the parties "never consented to the terms of the [final custody o]rder." Father's Brief at 16.

In this case, we cannot fulfill our duty under our broad scope of review and abuse of discretion standard in custody cases. *See S.T. v. R.W.*, 192 A.3d at 1160. While this Court must accept the factual findings of the trial court, we are only bound to do so if they "are supported by competent evidence of record." *Id*. Here, the trial court believed that the final custody order reflected custody awards and other ancillary provisions "tacitly, if not explicitly" agreed to by the parties on June 4, 2024. Trial Court Opinion, 7/30/24, at 2. Critically, however, there is no record of these settlement negotiations, nor of any agreement by the parties to any particular custody term included in the thirty-seven paragraphs of the final custody order. Indeed, the trial court confirms that "the record does not contain any explicit

agreement by the parties to the final [custody] order." ***Id***. As such, this Court is unable to ascertain the respective positions of the parties, the nature of the settlement negotiations, or the existence of mutual consent. Indeed, the parties now dispute that a meeting of the minds ever occurred or that the order is a consent decree.

Assuming that, consistent with its title, the order appealed from is indeed a final custody order, we are simply unable to review the court's factual findings without an evidentiary record and an analysis by the trial court of the sixteen section 5328(a) custody factors. ***See A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (reiterating that section 5323(d) requires that a trial court "delineate the reasons for its decision on the record in open court or in a written opinion or order, and that the court must set forth its mandatory assessment of the sixteen section 5323(a) custody factors prior to the deadline by which a litigant must file a notice of appeal).

Therefore, we must vacate the final custody order and remand for the creation of a complete, detailed, and representative factual record regarding the parties' numerous custody disputes. ***See Jones v. Floyd***, 419 A.2d 102, 105 (Pa. Super. 1980) (citation omitted) (reversing custody order and remanding for "a more purposeful hearing on the record" since we cannot "'permit a child's future to be disposed of in summary fashion'"). Following this hearing, we also direct the trial court to assess the requisite sixteen custody factors enumerated in section 5328(a) "on the record in open court

or in a written opinion or order" and "prior to the deadline by which a litigant must file a notice of appeal." ***A.V. v. S.T.***, 87 A.3d at 823.[6]

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/04/2025

---

[6] Given our disposition, we need not consider Father's second issue on appeal.