J-S18018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.K. | : | |
| | : | |
| Appellant | : | No. 2282 EDA 2020 |

Appeal from the Order Entered October 28, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. 0C1412299

BEFORE:    PANELLA, P.J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY McCAFFERY, J.:                **FILED AUGUST 17, 2021**

J.K. (Father) appeals *pro se*[1] from the child custody order entered in the Philadelphia County Court of Common Pleas, granting shared legal and physical custody of the parties' child, H.K. (Child).  The parties agreed to an overall custody scheme of "50/50," but agreed to submit to the trial court the issues of the particular custody schedule and the school that Child would attend for first grade.  The trial court determined the shared custody would be a "week on, week off" schedule, and that Child would attend the local school near M.K. (Mother).  Father now presents multiple challenges to the trial

---

* Retired Senior Judge assigned to the Superior Court.

[1] According to the trial court, Father is an attorney in Pennsylvania.  Trial Ct. Op., 3/8/21, at 2.  M.K. (Mother) has also filed a *pro se* brief in this appeal.

court's custody order, evidentiary rulings, and assessment of the child custody factors under 23 Pa.C.S. § 5328(a). We affirm.

## I. Facts & Procedural History

The record reveals that Father and Mother were formerly married. Child was born in October of 2013 and was seven years old at the time of the underlying October 2020 order. We note that on February 5, 2016, the trial court entered a final custody order by agreement of the parties. This order generally awarded the parties shared physical and legal custody.

The current phase of the custody litigation began in 2017. The record indicates that Mother raised concerns Father sexually abused Child. The Philadelphia Department of Human Services investigated and ultimately deemed the claims unfounded. The parties filed a bevy of pleadings throughout 2017, including petitions for custody modification and for special relief, which culminated in a temporary order entered on November 22, 2017. This temporary order awarded shared legal custody to both parties, primary physical custody to Father, and supervised partial custody to Mother on Sunday afternoons.

"Shortly thereafter, the parties entered into an agreement to retain the services of [a custody evaluator] to perform a custody evaluation." Trial Ct. Op. at 6. The parties further agreed the custody evaluation report shall not be placed in the record. *Id.*

The trial court conducted the first two days of the custody hearing on July 17 and August 20, 2018. The court interviewed Child *in camera*, Mother began presenting her case-in-chief, and the August 20th hearing adjourned during Father's cross-examination of Mother. The court entered temporary orders after each day of the hearing, eliminating the supervision of Mother's partial physical custody and increasing her custody time. The August 20, 2018, order, generally awarded Mother physical custody every weekend. The order also designated the pre-K school that Child would attend for the 2018-19 school year. ***See*** Trial Ct. Op. at 8. We note Child would attend the same school for kindergarten, and that Mother previously worked there. ***See*** N.T., 8/18/20, at 4, 13.

Nine months later, on June 10, 2019, the parties appeared, with counsel, for the third day of the hearing. At the start of the hearing, Father's counsel advised the court that the parties were "pretty close to an agreement," with Father "willing to do [a] 50/50 custody" arrangement," which was the custody evaluator's recommendation. N.T., 6/10/19 Vol. I, at 4, 5. The trial court conducted a second *in camera* interview of Child while the parties negotiated an agreement. When the court reconvened, Mother's counsel stated they had agreed to "the overall but not the details," including whether the custody arrangement would be on a "week on, week off" schedule or a "two, two five schedule." ***Id.*** at 31. The parties also disagreed about a schedule for religious holidays. ***Id.*** Father explained they agreed to submit

these issues to the court to decide, as the court had "enough knowledge about the case." *Id.* at 32-33.

Following further discussion, the trial court resolved that the parties would share physical custody on a "week on, week off" schedule. N.T., 6/10/19 Vol. I, at 33. Near the conclusion of the hearing, the court asked Father if he would like "another [hearing] date," to which he replied, "No." *Id.* at 53. Mother, however, requested "a status date . . . to make sure that [the parties] agree on a school" for Child, who was then five and a half years old. *See id.* Father agreed, "That's not a bad idea," and stated there were some additional, "mostly housekeeping things." *Id.* at 54. Pertinent to Father's claims on appeal, we note he did not seek to testify or present evidence at this hearing. Following the hearing, the court entered a "temporary agreement . . . without prejudice and without findings." Order, 6/10/19, at 1. The order awarded shared legal custody and alternating weekly physical custody, with the non-custodial parent having a dinner visit with Child on Wednesday evenings. A further hearing was scheduled, but it was cancelled due to the COVID-19 pandemic. N.T., 8/18/20, at 4.

The next activity in this case occurred the following year on June 25, 2020, when Father filed a *pro se* petition for special relief. Father averred Child would be entering first grade and the parties each wanted her to attend

the elementary school in their own school district.[2]  Father's petition requested this issue to be decided by an arbitrator.  Mother filed a *pro se* response and cross-claim on August 4, 2020, followed by her own *pro se* petition for special relief on August 13th.

On August 18, 2020, the trial court convened a virtual hearing to address Father's petition.  Father was represented by counsel, and Mother appeared *pro se*.  At this time, Child was six years old.  Father's counsel waived his request for arbitration and agreed that the court should decide the school choice issue.  N.T., 8/18/20, at 6.  Father testified that he and his partner purchased a home one month earlier in Berwyn, Chester County, in the Tredyffrin Easttown School District.  *Id.* at 8-9.  He sought to introduce a "Future Ready PA Index Report" for his local elementary school.[3]  *Id.* at 10-11.  Father's counsel had emailed this document to Mother on the morning of that hearing.  *Id.* at 10.  In response to the trial court's question, Father acknowledged the document was not authenticated.  *Id.* at 11.  The court then ruled the document was inadmissible hearsay, but permitted Father to testify as to what he believes about the school district.  *Id.*  Father testified

---

[2] The school that Child attended for pre-K and kindergarten only "went up to kindergarten."  N.T., 8/18/20, at 4.

[3] The trial court explains this report "is a Pennsylvania Department of Education index that attempts to show, generally, the average proficiency of a given Pennsylvania school on a variety of subjects."  Trial Ct. Op. at 18.

about the local Tredyffrin Easttown School District, and stated the elementary school for his area was excellent. *Id.* at 12-13. Furthermore, his counsel acknowledged it was "very comparable" to Mother's local school. *Id.* at 44. Finally, we note Father testified that Mother took Child to school late "at least a dozen times," and that he had filed a contempt petition against Mother on this basis. *Id.* at 20-21.

Mother testified her local Lower Merion School District was excellent and that she lived in the catchment area for the Penn Wynne Elementary School. N.T., 8/18/20, at 28-29. She likewise stated it was comparable to Father's school district. *Id.* at 37. Mother explained that because of the COVID-19 pandemic, she "started a [learning] pod for [the past] school year," and she would continue to lead a "pod" for Child and "a few children [Child] had gone to school with for the last two years." *Id.* at 30. Mother has "a teaching certificate with nine years of teaching experience." *Id.* at 31. Mother believed that permitting Child to stay "in this community with her friends" would benefit her "in every way possible during this difficult time." *Id.* at 29-30. On cross-examination by Father, Mother testified she was laid off due to the pandemic and was receiving unemployment compensation, but would receive compensation for leading the learning pod. *Id.* at 35. Mother lived with her boyfriend, who contributed to the monthly rent. *Id.* at 36. The trial court, however, sustained Mother's objection to Father's question of whether "they broke[ ] up within the last year for any period of time[.]" *Id.* at 36.

With respect to taking Child to school late, Mother explained: it was due to Child's weekly court-ordered therapy sessions; Child's "therapist confirmed all of those dates;" Father "was fully aware" of this and yet failed to withdraw his contempt petition as he stated he would; and in any event, Mother dropped off Child at school "during play," "before any learning happened." N.T., 8/18/20, at 27.

The following day, August 19, 2020, the trial court entered an order, concluding it was in Child's best interest to enroll at Penn Wynne, the school near Mother. On September 2nd, Father filed a counseled motion for reconsideration, and the court entered an order that same day, scheduling the motion to be heard at an already pending hearing on the parties' 2017 modification petitions. Mother filed a *pro se* response and cross-claim to the motion on September 9th.

The trial court conducted a virtual hearing on October 28, 2020. Again, Father was represented by counsel and Mother appeared *pro se*. Father attempted to call as a witness "an administrator in the enrollment policy section of Lower Merion School District," who would testify about "the enrollment process and what had occurred" with Child's enrollment. N.T., 10/28/20, at 6. Father's counsel had notified the court and Mother of this witness one day earlier, but Mother did not see the email until the morning of the hearing. *Id.* at 5, 7. The court ruled the witness could not testify, reasoning: "usually by family court standards[,] a party is to provide notice of

a witness 10 days in advance; nearly two months had passed since Father's September 2, 2020, filing of his reconsideration motion; and Father "waited too long" to notify Mother the night before the hearing. *Id.* at 8-9.

However, the court permitted Father to testify to the following: Mother had not enrolled Child at the Penn Wynne school, but instead in the school district's year-long virtual instruction program. N.T., 10/28/20, at 12. Father disagreed with this decision, and thus contacted the school district, which informed him that Mother did not in fact live in the catchment area for Penn Wynne, but instead for the Penn Valley School (that is in the same school district). *Id.* at 12, 15. Furthermore, because of the August 19th court order directing that Child would attend Penn Wynne, the school district "denied" Mother's request to enroll Child in the virtual program, but permitted Child to attend Penn Wynne. *Id.* At the time of this October 28, 2020, hearing, Child had attended Penn Wynne for three weeks "in a phased in program," with a combination of in-school and at-home virtual instruction. *Id.* at 22. Mother testified that she was previously informed by both the school district and her landlord that her home was located in the Penn Wynne catchment area, and she was surprised to learn, upon attempting to enroll Child, that she in fact lived in the Penn Valley catchment area. *Id.* at 45. We note the trial court found Mother's testimony credible. Trial Ct. Op. at 24.

Following the hearing, the trial court entered the underlying final custody order of October 28, 2020. The court denied Father's motion for

reconsideration of the school issue, and found it remained in Child's best interest to attend the Penn Wynne School. The order did modify the day of Mother's weekday dinner visit with Child, from Wednesdays to Mondays. Otherwise, the order "is substantially unchanged from the temporary order entered by agreement of the parties on June 10, 2019." Trial Ct. Op. at 1. This order also included an analysis of each of the custody factors enumerated at 23 Pa.C.S. § 5328(a).

## II. Timeliness of Father's Notice of Appeal

On November 30, 2020, Father filed a *pro se* notice of appeal, along with a Pa.R.A.P. 1925(a)(2) concise statement of errors complained of on appeal.[4] We first review the timeliness of this appeal, as "[f]ailure to file a

_____

[4] We note that the August 19, 2020, order resolving the parties' school choice dispute was interlocutory, as the parties' 2017 modification petitions remained pending at the time pursuant to the June 10, 2019 order. *See* Order, 6/10/19, at 2 ("Mother's petition to modify . . . and Father's petition to modify . . . shall be relisted . . . upon availability of a new date.") (unnecessary capitalization omitted); *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa. Super. 1996) ("[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties.").

Thus, the fact that the trial court did not expressly grant reconsideration of that order does not prevent us from reviewing it in this appeal. Once the court entered its final order on October 28, 2020, the August 19, 2020 order, as well as any other interlocutory orders entered in this case, became reviewable. *See Franciscus v. Sevdik*, 135 A.3d 1092, 1093 n.1 (Pa. Super. 2016) ("We note that once a final, appealable order has been appealed, any prior interlocutory order can be called into question.").

timely notice of appeal divests this Court of jurisdiction." **See In re J.M.P.**, 863 A.2d 17, 19 (Pa. Super. 2004).

On December 11, 2020, this Court received a letter from the trial court, suggesting Father's notice of appeal was untimely because he filed it more than 30 days after the entry of its order on October 28th.[5] **See** Pa.R.A.P. 903(a) (notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"). The court asserted the notice of appeal was due on Friday, November 27th, but he did not file it until Monday, November 30th.[6] This Court issued a rule to show cause order on January 4, 2021, to which Father failed to respond. Thus, on January 25, 2021, this Court quashed Father's appeal.

Father filed an application to reinstate his appeal that same day, pointing out that November 27, 2020, was the day after Thanksgiving and a court holiday, and thus he had until Monday, November 30th to file his notice of appeal. **See** Pa.R.A.P. 903, *note* (our Rules of Appellate Procedure

---

[5] "The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)." Pa.R.A.P. 108(b). The trial court docket confirms notice was given on October 28, 2020.

[6] The trial court's letter also suggested we should quash Father's appeal because he failed to timely pay his filing fees. However, our Rules of Appellate Procedure provide, "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal[.]" Pa.R.A.P. 902.

incorporate 1 Pa.C.S. § 1908, "relating to computation of time [and] the omission of the last day of a time period which falls on Saturday, Sunday or legal holiday"). This Court agreed and thus reinstated Father's appeal on February 9, 2021.

Nevertheless, the trial court continues to maintain that Father's appeal is untimely. Trial Ct. Op. at 2. The court asserts Father electronically filed his notice of appeal, on November 30, 2020, at 5:49 p.m., after the close of business. The court directs our attention to an exhibit it placed in the record, a copy of an email from Father that purportedly shows he sent his notice of appeal at that time. *Id.* at 2-3.

In his appellate brief, Father responds with his own exhibits, including a copy of an email purportedly showing he sent his notice of appeal at 12:49 p.m. on November 30, 2020. He also attaches a copy of an email to him on December 1, 2020, requesting the payment of filing fees, which includes a forwarded email thread purportedly showing the court clerk received Father's notice of appeal at 5:49 p.m. on November 30th. Regarding this 5:49 p.m. time stamp, Father protests that he "has no idea if it got sent from one clerk account to another or even if the time zone settings on the clerk's email account are accurate." Father's Brief at 4.

We cannot conclude that Father's appeal is untimely. Father's notice of appeal is stamped as filed with the clerk of family court on November 30, 2020. The trial docket entry for the notice of appeal indicates the time of filing

as "30-NOV-2020 09:17:56." In light of all the foregoing, we decline to quash Father's appeal, and we proceed to address his claims.

### III. Father's Questions Involved & Appellate Brief

Father presents the following claims for our review:

1) Did the court below err in refusing to allow [Father] to call witnesses and produce evidence with respect to the petitions filed and by unnecessarily delaying the issuance of a final custody order?

2) Did the court below err in not properly considering the evidence that was produced and using the factors in 23 Pa.C.S. § 5328 to make a custody order?

Father's Brief at 10 (suggested answers omitted).

We address Father's defective presentation of his claims on appeal. While Father raises two claims in his statement of questions involved, and the argument portion of his brief is divided into two sections, each section includes a litany of brief, tangential subclaims, some — as we discuss *infra* — lacking legal authority. *Cf.* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein[.]"); *In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority."). It is difficult to parse through Father's numerous arguments.

While Father's noncompliance with the Rules of Appellate Procedure is not so substantial as to require dismissal of his entire appeal, we will deem his claims waived where we cannot conduct meaningful review. *See* Pa.R.A.P. 2101 (if the defects in the brief are substantial, the appeal may be quashed or dismissed); *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 584 (Pa. Super. 2014) ("When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

## IV.  Timeliness of Custody Hearings & Evidentiary Rulings

We first note the relevant standard of review in child custody matters:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

In the first portion of his first claim, Father argues the trial court violated his right to due process by entering the August 20, 2018, interim order midway through the custody hearings, before he had the opportunity to present any of his own case-in-chief.  Father's Brief at 16.  Father suggests

- 13 -

that because the order significantly increased Mother's physical custody time, and the court "made abundantly clear that [it] wished to transition to shared physical custody," at the June 10, 2019, hearing "he had no real choice but to agree to shared physical custody". *Id.* at 17-18. After careful review, we determine these arguments are waived.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is de novo and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

> It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." "Due process is flexible and calls for such procedural protections as the situation demands."

*Id.* at 1161 (citations omitted).

Pennsylvania Rule of Civil Procedure 1915.13 provides for special relief in a custody action:

> At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. **The relief may include**, but is not limited to, **the award of temporary legal or physical custody** . . . .

Pa.R.C.P. 1915.13 (emphasis added).

Father's claim lacks merit pursuant to Rule 1915.13, which provided the trial court discretion to enter an interim custody order during the pendency of a custody proceeding. *See* Pa.R.C.P. 1915.13. Father does not cite any legal authority precluding a court from entering a temporary order before receiving

- 14 -

evidence from both parties. Furthermore, Father's argument — that he "had no real choice" but to agree, at the June 10, 2019, hearing to the order issued that day — is waived and belied by the record. As stated above, at that hearing, both parties advised the court that they "**agreed** to the 50/50 custody," but wished the court to determine whether the schedule of custody should be "week on, week off versus the two, two five schedule," and to determine the schedule for religious holidays. N.T., 6/10/19 Vol. I, at 31, 32 (emphasis added). Father's counsel specifically acknowledged the trial court had "enough knowledge about the case" to make these conclusions. *Id.* at 32-33. Accordingly, no relief is due. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

The second portion of Father's first claim is that the trial court "completely disregarded" Pa.R.C.P. 1915.4(c) and unnecessarily delayed the issuance of a final custody order. Father's Brief at 17, 19. He further avers he was prejudiced because he "never got the chance to produce evidence in his own case in chief" and "[h]ad he been given the opportunity, [he] could have presented his own case before supervised custody for [Mother] was changed and the Court may have not changed the custody order." *Id.* at 19. No relief is due.

Pennsylvania Civil Rule of Procedure 1915.4(c) provides:

> **(c) Trial.** [Custody t]rials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials

- 15 -

and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

Pa.R.C.P. 1915.4(c).

Here, the trial court did not complete the hearings in this matter until October 28, 2020, more than two years after the first hearing on July 17, 2018. Thus, we agree that the trial court did not comply with the plain language of Rule 1915.4. Nevertheless, it is apparent Father did not suffer prejudice. *See J.C. v. K.C.*, 179 A.3d 1124, 1130 (Pa. Super. 2018) ("[Relief] is not warranted merely because some irregularity occurred during the trial . . . ; the moving party must demonstrate . . . . that he or she has suffered prejudice from the mistake[.]"). First, with respect to removal of the supervision condition of Mother's physical custody, the trial court eliminated that requirement on July 20, 2018, after the first day of the hearing. This decision was thus not affected by any delay in completing the remainder of the hearings. Furthermore, any claim, that supervision of Mother's custody should have continued, was forfeited when Father eventually agreed, at the June 10, 2019, hearing, to shared "50/50" custody with her. *See* N.T., 6/10/19, at 31. Father's claim that he was denied the opportunity to present his case-in-chief is likewise waived, where, again, he agreed to shared custody and to the trial court's determining the specific custody schedule. *See id.* Father did not request to testify or present any evidence at the June 10th hearing. Finally, at the last two hearings on August 18 and October 28, 2020,

- 16 -

Father focused on the issue of school choice, and did not challenge at all the shared physical custody award or lack of a supervision requirement. For the foregoing reasons, no relief is due under Rule 1915.4.

Father next presents various challenges to the trial court's evidentiary rulings. We first note the relevant standard of review: "[T]he decision of whether to admit or exclude evidence is within the sound discretion of the [trial] court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the [trial] court overrides or misapplies the law." ***In re A.J.R.-H.***, 188 A.3d 1157, 1166-67 (Pa. 2018) (citations omitted).

Father contends the trial court abused its discretion by excluding, at the August 18, 2020, hearing, the "Future Ready PA Index" for the elementary schools in his and Mother's elementary schools. Father's Brief at 21. Father denies this evidence was, as the court found, hearsay. Father now asserts he was not seeking to admit it for its truth. ***Id.*** He claims: "A rating of '90', for example, is not offered to prove that a school is, in fact a '90', but rather as evidence to support the reasonableness of each party to being able to make a legal custody decision, which is precisely the matter being decided."[7] ***See id.***

---

[7] Father also contends, in a two-sentence argument, that the trial court should have taken judicial notice of the "Future Ready PA Index" because it "is an official government evaluation that is open to the public." Father's Brief at
*(Footnote Continued Next Page)*

Hearsay is defined as a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c)(1)-(2). Generally, hearsay is not admissible, unless a hearsay exception applies. **See** Pa.R.E. 802.

First, Father has waived any claim that he did not offer the evidence for the truth, as he made no such argument before the trial court. **See** N.T., 8/18/20, at 11; Pa.R.A.P. 302(a). Furthermore, his supporting argument is not entirely clear. In the same section of his brief, Father contends: "The Court should have considered the academics of the schools in deciding where the child should have attended school and not to [sic] was in error." Father's Brief at 23. The trial court's reasoning, that the report was offered to show the truth of its statements — the quality of the school's academic program — was reasonable. Father's present contention — that the evidence would have gone instead to "the reasonableness of each party to being able to make a legal custody decision" — is not entirely clear. **See id.** at 21. Accordingly, we would conclude Father has not presented a cogent discussion why the trial

---

21. Father has waived this claim, as: (1) he made no such request to the trial court to take judicial notice; and (2) he fails to support this argument in his brief with discussion of relevant legal authority. **See** Pa.R.A.P. 302(a); **M.Z.T.M.W.**, 163 A.3d at 465.

- 18 -

court erred in finding this evidence was inadmissible hearsay. *See M.Z.T.M.W.*, 163 A.3d at 465 (claim must be developed and supported by relevant authority).

Father contends in the fourth portion of his first claim that the trial court abused its discretion, at the August 18, 2020, hearing, by preventing him from presenting evidence regarding Mother's alleged lack of stability in housing and employment. Father maintains this evidence was relevant to show whether Child would continue to be a part of her present community — which was, Father maintains, Mother's "whole argument [for] the child attending Penn Wynne." Father's Brief at 24.

We conclude no relief is due. Father ignores the trial court's discussion of this claim, which specifically refers to the portion of the transcript where such evidence was presented. *See* Trial Ct. Op. at 20 ("It is simply untrue that this court refused to hear and consider evidence regarding [Mother's] economic stability and the stability of her residence."). The trial court quoted Mother's testimony that: although she moved in the past two years, she remained in the same school catchment area; she was recently laid off from her job due to the COVID-19 pandemic; she was receiving unemployment compensation; she would be compensated for leading the learning pod; and she lives with her boyfriend, who contributes to the monthly rent. *Id.* at 20-21, *quoting* N.T., 8/18/20, at 35-36. The court only restricted Father's cross-examination when his counsel asked Mother whether she and her boyfriend

- 19 -

have broken up in the past year — a ruling that Father does not challenge with specificity in this appeal. *See* N.T., 8/18/20, at 36. Accordingly, no relief is due.

In the fifth portion of his first claim, Father challenges the trial court's ruling to exclude his proposed witness, the school district enrollment administrator, at the October 28, 2020, hearing. He contends her testimony would have established Mother "had known long before which school's area she lived in and deliberately deceived the court." Father's Brief at 26. Furthermore, he alleges "there was no pre-hearing order directing the parties to exchange witness lists." *Id.* at 25.

Father articulated no such offer of proof before the trial court — that the witness's testimony would show Mother acted deceptively with respect to whether she knew her school catchment area. *See* N.T., 10/28/20, at 6. Accordingly, this claim is waived. *See* Pa.R.A.P. 302(a). Furthermore, even if not waived, we conclude the claim does not entitle him to relief. Father wholly ignores that he was permitted to testify about the very topics that he sought to present through the witness — "the enrollment process and what had occurred." *See* N.T., 10/28/20, at 6. Father extensively testified about Mother's enrollment of Child in the school district's virtual program, Father's disagreement with this decision and his communication with the school district, Father's subsequently learning that Mother did not in fact live in the Penn Wynne catchment area, but instead the area for Penn Valley, and the

school district's ultimate decision, based on the trial court's order, to enroll Child for in-school instruction at Penn Wynne. *Id.* at 11-16, 19-22. Finally, Father fails to address the trial court's finding that Mother was credible — that both the school district and her landlord had misinformed her that her residence was within the Penn Wynn catchment area. *See* Trial Ct. Op. at 24. Accordingly, we discern no prejudice to Father. *See J.C.*, 179 A.3d at 1130.

Next, Father argues in the sixth and final portion of his first claim that the trial court did not permit him to present testimony regarding his "May 31, 2019," contempt petition before disposing of it in its October 28, 2020, final order. Father's Brief at 27-28. We find no merit to this assertion.

Our review indicates Father did not file a petition for contempt on May 31, 2019, although he did file one on June 6, 2019.[8] In this petition, he alleged Mother was failing to bring Child to school on time. At the beginning of the June 10th hearing, four days later, Father raised "the issue about mom getting [Child] to school on time on Monday." N.T., 6/10/19 Vol. I, at 3. At the end of the hearing, after the parties reached their "50/50" custody agreement, Father's counsel requested the trial court include in its order a provision that "the parent is expected to take [Child] to school timely . . . things like that, that we had agreed on." *Id.* at 53-54. This statement,

_____

[8] *See also* Trial Ct. Op. at 25 ("[Father] again does not specify to which petition for contempt he refers. [H]e filed petitions for contempt on February 16, 2017, and June 6, 2019.").

coupled with the lack of any specific request to further address his contempt petition, indicates Father's satisfaction that the trial court duly considered his claims. Furthermore, Father again wholly ignores the record, specifically Mother's explanation at the August 18, 2020, hearing, that Child was late to school some days because of Child's court-ordered therapy appointments. Significantly, Father does not refute Mother's testimony that the therapist confirmed the timing of these appointments and that **he was aware** this was the reason why Child was late to school. *See* N.T., 8/18/20, at 27. Father also fails to address the court's specific finding that Mother was credible on this issue. *See* Trial Ct. Op. at 25-26.

As we conclude none of Appellant's first issue arguments merit relief, we proceed to his second issue on appeal.

## V. Statutory Custody Factors, 23 Pa.C.S. § 5328(a)

Again, Father presents multiple arguments under a single claim. First, he asserts the trial court failed to place sufficient weight on the custody evaluation prepared for this case, which he characterizes as the "most important piece of evidence" in the proceeding. Father's Brief at 28-29. No relief is due.

Father fails to address the trial court's discussion of his claim. In its opinion, the court stated:

> [T]his court absolutely considered the custody evaluation conducted by Dr. Constance Mesiarik. This court had read Dr. Mesiarik's report . . . and carefully considered Dr. Mesiarik's recommendations. This court fully agreed with the evaluator's

- 22 -

descriptions of the relationship between [the parties] as "toxic." Dr. Mesiarik noted that she had not received a reply from [Father's] former therapist.

\* \* \*

Based on the recommendations of the custody evaluator [the parties] entered into an agreement for custody on June 10, 2019. In addition, Dr. Mesiarik's recommendations prompted this court to order the parents engage in co-parent counseling in [the] order of June 10, 2019[.]

Trial Ct. Op. at 22-23 (record citation and footnote omitted). While Father challenges the weight the trial court accorded to the evaluation, our standard of review requires us to defer to the court's weight and credibility determinations. *See V.B.*, 55 A.3d at 1197. Furthermore, Father again fails to acknowledge that he agreed to the "50/50" shared custody that was recommended by the custody evaluator. *See* N.T., 6/10/19 Vol. I, at 31.

Second, Father challenges much of the trial court's findings under the statutory child custody factors at 23 Pa.C.S. § 5328(a). Father's Brief at 29-42. We first set forth the statutory factors:

**(a) Factors. —** In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 23 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

For example, Father avers the trial court erred in finding Mother "demonstrates a willingness to compromise," and thus erred in finding she was "more likely to encourage and permit frequent and continuing contact." Father's Brief at 29, *citing* 23 Pa.C.S. § 5328(a)(13). Father also claims that any "present and past abuse committed by party" did not apply, and the court should not have mentioned the "a prior ex-parte temporary protection order which was subsequently vacated." Father's Brief at 30, *citing* 23 Pa.C.S. § 5328(a)(2).

Again, Father fails to consider that he **agreed** to "50/50" shared custody, and that the parties agreed the trial court would determine the particular weekly schedule. *See* N.T., 6/10/19 Vol. I, at 31-33. While Father contends on appeal that the evaluation recommended a "gradual" transition to shared physical custody, he agreed to the immediate effect of the parties' agreed-upon custody arrangement on June 10, 2019. At neither of the two subsequent hearings (August 18 and October 28, 2020,) did Father request the court to revisit the custody award or argue a different schedule would better serve Child's best interests. Instead, Father's sole issue was the choice of Child's school. Under these circumstances, and mindful of our standard of review, we discern no basis to disturb the October 28, 2020 order.

Finally, Father suggests, in a discussion of Section 5328(a)(13) (level of conflict between the parties), that the trial court committed an abuse of

discretion by failing to appoint a co-parent counselor. Father's Brief at 38. Father has waived this claim by failing to include it in his Rule 1925(a)(2) statement and failing to develop it in his brief with citations to relevant legal authority. *See* Pa.R.A.P. 1925(b)(4)(vii) ("[A]ny issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived."); *M.Z.T.M.W.*, 163 A.3d at 465-66.

## VI. Conclusion

We conclude Father's claims do not entitle him to relief, and thus affirm the trial court's October 28, 2020, order awarding the parties' shared legal and physical custody of Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2021