J-S23016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMAAL AKIVA JACKSON FERGUSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAROLINA FERNANDA RAVANAL | : | No. 579 EDA 2021 |
| PEREZ | : | |

Appeal from the Order Entered March 4, 2021,
in the Court of Common Pleas of Bucks County,
Civil Division at No(s):  No. 2020-60599-C.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    Filed: August 19, 2021

In this matter, J.A.J.F. (Father) appeals the decision of the Bucks County Court of Common Pleas to award primary physical custody of the parties' nineteen-month-old son, S.J.F. (Child), to C.F.R.P. (Mother).  Father argues the trial court erred in its analysis and application of several factors under the Child Custody Act.  ***See*** 23 Pa.C.S.A. § 5328(a)(1)-(16).  After review, we affirm.

The relevant factual and procedural history may be abbreviated as follows:  In December 2018, Mother immigrated from Chile to the United

_____

[*] Retired Senior Judge assigned to the Superior Court.

States with her young daughter[1] to be with Father, who is an American citizen. The parties met over the internet; Mother is not an American citizen but is in the country legally.

Child was born in June 2019, and the parties married in August 2019. They separated in April 2020, when Mother vacated the marital home and left the jurisdiction; Father simultaneously petitioned for emergency sole custody, believing Mother would leave the country. Mother was ordered to stay in the United States, and the matter was set before a custody evaluator. Meanwhile, Mother sought a protective order under the Protection From Abuse (PFA) Act. *See* 23 Pa.C.S.A. §§ 6102-6122. Although PFA litigation lingered, the court eventually granted Mother interim relief, including primary physical custody.

Around this time, the custody evaluator issued its report, recommending shared physical and legal custody. Mother retained interim primary custody, notwithstanding the evaluator's recommendation, by virtue of the temporary PFA order. Notably, a final PFA order was never issued, as Mother evidently withdrew her petition. Father sought custody modification, and he brought a custody contempt petition against Mother. The court set the final custody hearing for February 2021. In the days before the hearing, Father filed an amended custody complaint, seeking sole legal and primary physical custody.

---

[1] The daughter is not the subject to this custody dispute and was born to a different father.

The court held a full custody hearing on February 11, 2021. On February 12, the court delineated its findings on the record, pursuant to 23 Pa.C.S.A. § 5323(d). *See* N.T. (Findings of Fact), 2/12/21, at 1-16. The resulting custody order was not issued until March 2, 2021. The court ordered shared legal custody, but it awarded Mother primary physical custody. A principal motivator behind the court's decision was Mother's ability to tend to Child, given his young age and his relatively unique needs, which include frequent doctor appointments for digestive issues and speech therapy. The court awarded Father partial custody each weekend, except when he was called to weekend duty with the Army Reserves. Father timely filed a notice of appeal, and the court issued an opinion, pursuant to Pa.R.A.P. 1925(a). *See* Trial Court Opinion (T.C.O.), 4/1/21, at 1-7.

Father presents the following issues for our review:

1. Did the trial court abuse its discretion, in making its determination, by giving positive consideration to Mother's status as primary custodian, the interim status quo, created by order as a direct function of Mother's unilateral and unreasonable decision of removing Child from the marital residence when he was only 9 months old, especially since it found Mother's numerous, perpetual allegations of abuse by Father as not credible, that "clearly, Mother feels that it is in the child's best interests to have minimal contact with Father at this young age," and that the need for stability and continuity of the Child does not "seriously weigh in favor of one party or the other?"

2. Did the trial court err, in making its determination, by considering the Child's older sibling, as both sibling and extended family relationship, as the definitions of sibling relationship and extended family relationship

are dissimilar, and cannot be determined to be the same?

3. Did the trial court err and abuse its discretion, in not awarding Father primary nor joint physical custody, by penalizing Father for his work schedule, where it found that Father had satisfactorily "indicated the ability to make appropriate child care arrangements," and that Father is "capable to provide, **other than when he's at work?**"

4. Did the trial court grossly abuse its discretion, in concluding that Father's time with the Child should be limited, "based on the Child's young age," where there is no support in the record that the parties agreed to an "age" restriction nor that this restriction is necessary to protect Child from some detrimental impact or safety concern, in light of the fact that it (i) found Father "able to perform parental duties," (ii) found the distance between the parties' residence not to be a "a significant barrier," and (iii) simultaneously ordered evening exchanges on Saturdays and Sundays, in both the regular and holiday schedule?

Father's Brief at 8-9 (emphasis original).

We begin by observing our well-settled scope and standard of review for custody matters:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are

> unreasonable in light of the sustainable findings of the trial
> court.

**S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

The Child Custody Act provides: "In ordering any form of custody, the court shall determine the best interests of the child by considering all relevant factors [(a)(1) through (a)(16)], giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S.A. § 5328(a)(1)-(16). In the case at bar, Father raises four issues, each challenging various aspects of the court's analysis of the factors in Section 5328(a).

The essence of Father's first issue is, when the trial court analyzed the custody factors, it improperly considered the parties' interim *status quo*, which was created when Mother unilaterally left the marital residence and obtained a temporary PFA order. **See generally** Father's Brief at 14-18. By way of background, we observe that when the parties separated, there was no existing custody order. Predictably, some chaos ensued. Father initiated custody litigation when he presented an emergency petition out of fear that Mother would leave the country with Child. The matter was set before a child custody evaluator, who eventually recommended interim joint physical custody. But before this recommendation was issued, Mother filed for Protection From Abuse. She was granted a temporary PFA order, complete with interim primary physical custody. Mother retained this interim, primary custody throughout the pendency of the litigation, notwithstanding the fact that Mother apparently withdrew her PFA petition before that matter came to

a final hearing.  After the final custody hearing, the court awarded Mother primary physical custody.

Now on appeal, Father reasons the court effectively made a presumption of custody, in favor of Mother, based on the fact that Mother was the interim primary custodian throughout most of the litigation.  To prove his argument, Father cites the court's specific custody factor determinations.  For instance, Father concludes that the court erred when it determined that Mother was the parent more likely to perform parental duties, pursuant to Section 5328(a)(3). The inference here is twofold: first, that Mother obtained "backdoor" interim custody award *via* the PFA Act; and second, that the court relied on this interim *status quo* to conclude that Mother was the more dutiful parent.

Similarly, Father also cites the court's determination under Section 5328(a)(4), which evaluates "[t]he need for stability and continuity in the child's education, family life and community life." 23 Pa.C.S.A. § 5328(a)(4). Curiously, the court determined that this factor did not "really seriously weigh in favor of one party or the other, especially considering [Child's] young age." **See** Findings of Fact, at 3.  Yet, Father maintains this finding, though neutral on its face, improperly prejudiced him.  He reasons the court implicitly found that Child did not need stability, because Mother – as the interim primary caregiver – had already offered the same. **See** Father's Brief at 17-18.  Thus, according to Father, the only reason why Mother was more likely to perform parental duties – and the only reason why Child was not in need of stability –

was because of Mother became the interim primary caregiver under a dubious temporary PFA order.

We understand Father's arguments, but his characterization of the trial court's rationale is inaccurate. It is true, the court determined Mother was the parent more likely to perform parental duties, under Section 5328(a)(3). **See** Findings of Fact, at 3. The court noted further that "Mother has been the primary caregiver up until this point." **See** Findings of Fact, at 3. This does not mean, however, that the court rendered this finding only because Mother served as the interim, primary custodian. For one thing, the court also found Father was able to perform parental duties for Child. **See id**. But to Father's larger point – that Mother had reaped the benefit of being the interim primary caregiver while actively thwarting Father's efforts to obtain shared custody – the court accounted for the same. Despite Mother's attempt obtain a PFA order against Father – and the allegations raised thereby – the court determined that there was no abuse between the parents, under Section 5328(a)(2).[2] Thus, the lurking issue of whether Mother somehow achieved interim primary custody through an ill-gotten temporary PFA order is ultimately immaterial. In fact, the court found that Mother purposely sought to minimize Child's contact with Father; thus, the court determined that

---

[2] The court did acknowledge, however, that Father was controlling. Even so, the court also determined that, under Section 5328(a)(13)(relating to the level of conflict between the parties) the animosity between the parties was actually not a high level, and that this factor was largely irrelevant. **See** Findings of Fact, at 5-6.

***Father*** was the parent "more likely to encourage and permit frequent and continuing contact between" Child and the opposing parent, under Section 5328(a)(1).

Regarding Child's need for stability under Section 5328(a)(4), the court found this factor was simply ***inapplicable*** due to Child's young age, not because Mother, as the interim primary caregiver, had already provided the stability. ***See*** Findings of Fact, at 3.  Thus, contrary to Father's first claim, we discern no reason to believe that the court gave positive consideration to Mother based on the fact that she had been the interim primary caretaker under the temporary PFA order.  Father's first issue is without merit.

In his second issue, Father claims the court erred when it conflated Section 5328(a)(5) (the availability of extend-family) with Section 5328(a)(6) (whether the child has sibling relationships).  ***See*** Father's Brief at 19-20. Mother lives with her daughter (Child's older half-sister) from another relationship.  This daughter was approximately six years old at the time of the custody hearing.[3]  In its Findings of Fact, the court determined:

> [Section 5328(a)(5)], the availability of extended family. Clearly, there is extended family involved in that [Child] has a sibling on Mother's side, and that factor, therefore, somewhat favors mother.

_____

[3] The daughter's exact age was unclear from the record.  Mother testified that her daughter was four years old when Child was born.  ***See*** N.T. (Custody Hearing), 2/11/21, at 102.

[Section 5328(a)(6)], [Child's] sibling relationships. And for the reasons I cited in the last factor, that factor somewhat favors Mother.

Findings of Fact, at 3-4.

On appeal, Father argues there is a distinction between a sibling and extended family. In its opinion, the trial court defended its decision to consider Mother's daughter as both "extended family" and a "sibling," because Father was not the daughter's biological parent. *See* T.C.O. at 4. In some sense, we agree with Father. The Comment to Section 5328(a)(6) provides that the sibling factor is "intended to include full-blood siblings, half-blood siblings, step-siblings and adoptive siblings." *See* Comment (2010) to 23 Pa.C.S.A. § 5328(a)(6). In other words, this factor is generally not designed to distinguish full-blood siblings from half-blood siblings. Of course, we can certainly imagine a situation where a sibling, whether by age or some alienating reason, resembles more of an extended family member than sibling. But that was not the case here. Still, we do not agree with Father's position that the court committed a reversible error or abused its discretion.

Father essentially argues that the court double-counted Child's sister by determining that her existence favored Mother under both Section 5328(a)(5) *and* Section 5328(a)(6). What Father misunderstands is that the custody factor analysis under Section 5328(a) is not a scorecard, where the parent who "wins" the most factors achieves primary custody. How the trial court balances these factors is within its discretion, so long as the court gives "weighted consideration to those factors affecting the child's safety." *See* 23

Pa.C.S.A. § 5328(a). Importantly, Father does not argue that Section 5328(a)(5) (extended family) should have favored him because of his relatives, nor does Father argue that the court's overall custody award hinged on these findings. Indeed, the court did not weigh heavily either of these factors in reaching its final determination, even though the court determined they favored Mother. As was made clear by the court, both in its Findings of Fact and Trial Court Opinion, the decision to award Mother primary custody was based primarily on Child's young age, the Child's needs, and the fact that Mother was in a better position to tend to those needs until Child grew a little older. Father's second claim is without merit.

Next, we address Father's third and fourth issues contemporaneously, given their interconnected nature. In Father's third issue, he claims the court penalized him for his busy work schedule when determining that Mother was more available to tend to Child. Similarly, Father's fourth issue questions whether the court erred when it determined that a parent's availability was paramount, given Child's young age.

On these points, we observe the court made the following determinations:

> [Section 5328(a)(10)], which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child. Because of Father's work schedule, I find that that factor favors Mother because she is available more, but I also find that Father is capable, other when he's at work, to provide for [Child's] physical, emotional, developmental, educational, and special needs.

[…]

> [Section 5328(a)(12)], each party's availability to care for the child and ability to make appropriate childcare arrangements. Clearly, Mother is available more to care for [Child], although Father does and he has indicated he has the ability to make appropriate childcare arrangements, but, overall, I think that factor favors Mother.
>
> [Regarding Section 5328(a)(16),] [a]nd the final factor is simply any other relevant factor. I think the most relevant factor that I'm using in making the determination is, really, who's available, on a daily basis, to care for [Child] at this young age. I don't fault Father for having a job and being a member of the service – a service member, but it certainly does subtract from the time that he has actual time to be with [Child.] That being said, he also, because of his employment and because of his work ethic, has the ability to provide economically for the child greater than Mother.

Findings of Fact, at 5, 7.

Father maintains a 40-hour work week, and he is a member of the Army Reserves, which obligates him to serve one weekend a month. On top of this, Father works for a travel magazine, which requires him to go to various out-of-town destinations. On appeal, Father argues the court effectively penalized him for his work schedule. *See* Father's Brief at 21. He reasons that the court employed a "zero sum analysis" which punishes any working party, regardless of that party's ability to make appropriate childcare arrangements. *See id.* at 22. For support, Father relies on case law forbidding a court from depriving a parent of custody, based on the parent's work schedule, where that parent

may make suitable childcare arrangements. *See Johnson v. Lewis*, 870 A.2d 368, 374 (Pa. Super. 2005).[4]

However, *Johnson* is distinguishable, both on its facts and in terms of its procedural disposition. In *Johnson*, the father testified that he would hire a live-in nanny to care for the parties' fifteen-month-old child in the event Father would have to return to a nightshift work schedule. *See id.* The court awarded shared custody, and the mother appealed. Although *Johnson* has some similarities to the instant case – namely, that the children at issue were toddlers – the *Johnson* father's nightshift obligations were sporadic. Here, Father's obligations are far more regular and concrete. But more importantly, the Child in this case had relatively unique needs. Child was still breastfeeding and had not taken to the bottle, despite Mother's efforts to wean Child, and despite her efforts to introduce solid food. It appears the difficulty was due to Child's digestive issues, including Celiac disease (*i.e.*, the inability to consume gluten), for which Child sees a gastroenterologist. *See* N.T., at 115-116. At the time of the hearing, Child was still nursing multiple times per night. *Id.* at 115. Child also had other needs, including delayed speech, which necessitated regular visits to a speech therapist. And apart from these special needs, the court found that Father struggled with caring for a toddler,

---

[4] Father also cites to a non-precedential case that has no persuasive authority. *See* Father's Brief at 22 (citing *J.A.S. v. L.A.S.*, -- A.3d --, 2016 WL 634783 (Pa. Super. 2016) (non-precedential decision)). Still, we can plainly see Father intended to rely on the holding in *Johnson*, *supra*. And while *Johnson* was predicated upon the prior iteration of the Child Custody Act, it still holds persuasive value.

generally. *See* T.C.O. at 6. In its opinion, the court cited Mother's testimony that Father had returned Child to her care without shoes or appropriate clothing. *See* N.T., at 120-121. Thus, the facts of this case are distinguishable from those in *Johnson*.

Beyond the factual distinctions from *Johnson*, we also cannot ignore the difference in the procedural disposition on appeal. In *Johnson*, it was the mother who appealed after the working-father successfully achieved shared custody. In reviewing the trial court's custody award for an abuse of discretion, we concluded that its decision was supported by the record and was not manifestly unreasonable. Here, the procedural disposition of the parties is the opposite, but our deference to the trial court remains the same. To that end, we observe:

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citation omitted).

Instantly, what Father has asked us to do, in essence, is to reweigh the evidence. That is not our role. The trial court placed considerable weight on the young age of the Child combined with Child's health issues. If either of these two facts – Child's young age and Child's digestive issues – existed by itself, then perhaps we might be more hesitant to affirm the court's primary custody award. Viewed together, however, the court determined that given

- 13 -

Child's young age, his health problems would be exacerbated under a shared physical custody arrangement. The court acknowledged that this barrier to Father's custody would eventually disappear, one way or the other. The court noted its expectation that once Child becomes older, Father should be entitled to more time. *See* Findings of Fact at 11.

In sum, because the court thoroughly considered the evidence of record, our interference with the custody award here is unwarranted. The court committed no error of law, nor was its decision manifestly unreasonable. The court did not give primary consideration to Mother's status as interim primary caregiver, nor did the court give Child's relationship to his sister undue weight. Rather, the court was within its discretion to award Mother primary physical custody in light of Child's health concerns combined with Child's young age.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/21