J-S10016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOYCE SHAFFER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFREY CONDO AND BRITTANY CONDO | : | |
| | : | No. 1249 MDA 2025 |
| v. | : | |
| | : | |
| QUINTIN TITUS | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered August 25, 2025
In the Court of Common Pleas of Clinton County Civil Division at No(s):
369-2022

| | | |
|---|---|---|
| JEFFREY CONDO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRITTANY CONDO AND QUINTIN TITUS | : | |
| | : | No. 1483 MDA 2025 |
| APPEAL OF:QUINTIN TITUS | : | |

Appeal from the Order Entered August 25, 2025
In the Court of Common Pleas of Clinton County Civil Division at No(s):
1085-2018

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: APRIL 24, 2026**

Quintin Titus ("Father") appeals pro se from the August 25, 2025 custody order concerning his son, K.J.C., born in February 2017. In pertinent part, the underlying order denied Father's pro se request for in-person contact with K.J.C. while Father is incarcerated. After careful consideration, we vacate and remand for further proceedings consistent with this decision.

We gather the relevant facts and procedural history from the certified records. Father and K.J.C.'s mother, Brittany Condo ("Mother"), were never married. There is a dearth of information in the record regarding Father's involvement with the family for the first five years of K.J.C.'s life. We discern that K.J.C. was in Mother's care and custody until he was approximately eighteen months old. The custody case at docket number 1085-2018 began on August 28, 2018, when Jeffrey Condo ("Maternal Grandfather") filed a complaint seeking legal and physical custody of K.J.C. based upon Mother's battle with substance abuse. Father was not listed as K.J.C.'s parent in this filing. *See* Complaint for Custody, 8/28/2018, at 2 (unpaginated).

On September 13, 2018, the trial court filed an interim custody order that, inter alia, awarded Maternal Grandfather legal and physical custody of K.J.C. Concurrently, Clinton County Children and Youth Services ("CYS") began offering services to Mother and, eventually, she began participating in a substance abuse treatment program. *See* Memorandum, 10/29/2018, at 1. On November 21, 2018, the trial court filed a final custody order awarding Mother and Maternal Grandfather "shared legal and physical custody" of K.J.C.

Trial Court Order, 11/21/2018.  For the next three and a half years, it appears that the trial court had no further involvement with this family.

On April 11, 2022, Joyce Shaffer ("Paternal Grandmother") filed a custody complaint seeking primary physical custody of K.J.C. at docket number 369-2022.[1]  At this time, K.J.C. was five years old.  Paternal Grandmother's complaint identified Father as K.J.C.'s parent for the first time in these proceedings and explained that he was incarcerated at State Correctional Institution Fayette ("SCI Fayette").  The circumstances of Father's imprisonment are not well documented in the record, stating only that he was convicted of "aggravated assault" stemming from a "gun fight in Clearfield County with law enforcement authorities" on an unspecified date. Memorandum, 7/14/2023, at 2; Father's Brief at 5.  Father's earliest possible release date will occur sometime in 2034.  **See** Memorandum, 8/29/2024, at 1.

On May 16, 2022, the trial court filed an order directing that Paternal Grandmother's custody complaint be treated as a petition to intervene at

_____

[1] Paternal Grandmother commenced a separate custody action because she apparently was unaware of the case at docket number 1085-2018.  **See** Complaint for Custody, 4/11/2022, at 3 (unpaginated) (indicating Paternal Grandmother had "no information" regarding any other "custody proceeding" concerning K.J.C. in a Pennsylvania court).

docket number 1085-2018.[2]  *See* Trial Court Order, 5/16/2022, ¶¶ 1-2.  In this order, the trial court maintained the existing custody awards, but granted Paternal Grandmother partial physical custody of K.J.C. "every Saturday from 12:00 noon until 5:00 p.m." with the stipulation that K.J.C. "shall not have any contact with [Father], whether in person, by phone, or by any other electronic communication." *Id.* ¶¶ 4-5.  The certified record is silent regarding why the trial court restricted Father's contact with K.J.C.

Contemporaneously, the trial court appointed a guardian ad litem ("GAL") to represent K.J.C.  On November 10, 2022, the court granted a request from the GAL and ordered psychologist Robert J. Meacham, M.S. ("Meacham"), "to conduct interviews and evaluations of the parties."  Trial Court Order, 11/10/2022, ¶ 2.  Between November 2022 and June 2023, however, Meacham took no action in the case.  He explained this lapse, as follows:

> Unfortunately, this office never received a copy of [the November 10, 2022 order] until my need for involvement was brought to my attention **by way of an [o]rder of June 15, 2023, directing me "to address Father's request in a custody proceeding** and also forward a report to [the trial court] regarding the status of [Meacham's] mediation, evaluation and recommendation."

*See* Memorandum, 7/14/2023, at 1 (emphasis added).  This passage from Meacham's memorandum is the first indication of Father's involvement in

---

[2]  Both dockets, however, have remained active throughout the proceedings. This has led to many of the filings referenced in this case appearing in the docket and record of one case while remaining absent from the other.

these proceedings, i.e., his submission of a custody-related request concerning K.J.C. *Id.* Neither this request, nor the order quoted by Meacham, are present in the certified records or dockets of either of the above-captioned cases. Nonetheless, we are able to discern that Father requested some manner of "contact" with K.J.C. while incarcerated. *See* Trial Court Order, 5/22/2024, ¶ 4.

Thereafter, it appears that Meacham began acting as a formal mediator. As reflected in the correspondence between Meacham and the trial court between July 2023 and July 2024, no immediate action was taken concerning Father's first request.[3] Meanwhile, in December 2023, Mother and K.J.C. relocated to Sedley, Virginia. *See* Memorandum, 12/8/2023, at 1.

In May 2024, the trial court indicated its intent to address Father's still-pending custody request at a status conference scheduled for August 2024. *See* Trial Court Order, 5/22/2024, ¶ 4 ("The [s]tatus [c]onference shall also address Father's previous request to have contact with the child."). In a pro se letter to the trial court postmarked July 11, 2024, Father wrote as follows:

> I'm writing this letter to you to try and understand why I'm not allowed to have contact with my son [K.J.C.] In the past there

---

[3] Specifically, Meacham documented his work in the case in a series of memoranda that were filed with the trial court on a semi-regular basis. *See* Memorandum, 7/8/2024, at 1-2; Memorandum, 6/26/2024, at 1-2; Memorandum, 6/25/2024, at 1-2; Memorandum 6/17/2024, at 1-2; Memorandum, 5/23/2024, at 1-2; Memorandum, 5/9/2024, at 1; Memorandum, 4/4/2024, at 1-2; Memorandum, 12/8/2023, at 1-2; Memorandum, 12/4/2023, at 1; Memorandum, 7/14/2023, at 1-2.

- 5 -

was a [protection from abuse ("PFA") order] in place; however, the PFA was dropped last year.[4]

Being able to see and talk to my son benefits our relationship. It not only helps me out, but I believe it helps my son out to[o].

I would really like to know why this court is making such an ordeal out of this, especially since the PFA has been dropped for a year.

Please write back to me explaining this matter. I would just like to see my son.

Letter, 7/11/2024, at 1 (unpaginated).[5]

In response, the court directed Meacham and the child's GAL to "be prepared to address" Father's request at the August 2024 status conference. Trial Court Order, 7/19/2024, ¶ 2. A copy of this order was transmitted to Father. *See id.* ¶ 3. This is the first time Father was served copies of filings in these cases. On July 30, 2024, the court filed an order directing the prison officials at SCI Fayette to ensure that Meacham had an opportunity to communicate with Father. This order also noted that the status conference set for August 2024 would occur as scheduled. *See* Trial Court Order, 7/30/2024, ¶ 3. The trial court also provided Father with a copy of this order.

Around this same time, Paternal Grandmother filed an emergency ex parte petition alleging that Mother had been arrested in Virginia on child abuse

---

[4] There is no evidence that a PFA order was ever entered against Father.

[5] This letter from Father is attached to the trial court's July 19, 2024 order.

charges in connection with allegations that she abused narcotics while K.J.C. was in her care. Consequently, the trial court awarded Paternal Grandmother sole physical custody and shared legal custody with Maternal Grandfather. *See* Trial Court Order, 7/30/2024, ¶¶ 1-3. K.J.C. was returned to Paternal Grandmother's custody in Pennsylvania, where he has remained.

On August 16, 2024, Meacham filed a memorandum explaining that he had been unable to establish contact with Father via telephone. *See* Memorandum, 8/16/2024, at 1 ("The phone line is either busy or it rings without the ability to leave a message."). Ultimately, the issue of Father's contact with K.J.C. was not addressed at the August 19, 2024 status conference. Instead, the court entered an order that directed Meacham, again, to establish contact with Father. Trial Court Order, 8/19/2024, ¶ 3. A copy of this order was also provided to Father. *See id.* at 3 (unpaginated). By this point, his original request for custody had languished for approximately fourteen months.

On August 29, 2024, Meacham filed a memo reporting the following:

I did have the opportunity to speak, via Zoom, with [Father] after the recent hearing. As everyone is aware, he is incarcerated until at least 2034, but he [i]s able to have phone calls with family members. He wishes to have contact with [K.J.C.] In my recent Zoom with [K.J.C.], he indicated that he has the desire to talk with his father via phone. I have learned that [F]ather is able to call [Paternal Grandmother] frequently. In fact, when he has done so, [K.J.C.] has been asking [Paternal Grandmother] if he could speak with his father via phone. I did discuss with [F]ather appropriate topics with [K.J.C.] and I do feel that he has an understanding of what to say and what not to say to [K.J.C.] As a result, I believe it is in [K.J.C.'s] best interests to have phone contact with his

- 7 -

father in a manner that is regulated by [Paternal Grandmother] when [F]ather calls home. Those phone calls can start immediately.

Memorandum, 8/29/2024, at 1. Meacham indicated his belief that the entry of a "revised" custody order was not necessary to effectuate this contact between Father and K.J.C. *Id.* at 2. The trial court apparently credited this suggestion, as it took no further action on Father's first request. Father and K.J.C. began to communicate regularly by telephone and video shortly after the above-quoted memorandum was filed.

Between August 2024 and February 2025, there is no further mention of Father in the certified record.[6] On March 6, 2025, Meacham filed a memorandum reporting on Father and K.J.C.'s ongoing contact, as follows:

K.J.C. continues to have regular phone contact with [Father], who remains incarcerated at SCI Fayette. [K.J.C.] tells me he looks forward to those calls and he is expressing the desire to have a visit with his father at the correctional facility. In discussing the potential for visitation with [K.J.C.] when I met with him yesterday, I am confident that he is emotionally prepared to visit his father in that setting and that he is willing to do so without any hesitation or reluctance.

Memorandum, 3/6/2025, at 1-2. Thus, Meacham requested that the trial court enter "an order recognizing that it is in [K.J.C.'s] best interest for him to visit with his father while incarcerated[.]" *Id.* at 2. In an order filed on

_____

[6] Father was listed as a recipient of a notice from the court administrator regarding the scheduling of a hearing in October 2024. *See* Notice, 8/22/2024, at 1 (unpaginated). Thereafter, it appears that Father no longer received notice of filings in these proceedings.

March 11, 2025, the trial court indicated its intent to address Meacham's request at a hearing on April 14, 2025. *See* Trial Court Order, 3/11/2025.

On the same day as the scheduled hearing, the trial court filed an order based upon the "agreement" of Paternal Grandmother, Maternal Grandfather, and the GAL, which denied Meacham's request. *See* Trial Court Order, 4/14/2025, ¶ 1 ("The child shall not have visitation/contact with Father at any State Correctional Institution. FaceTime, telephone contact, and correspondence are permitted."). No rationale was provided by the trial court. Father did not participate in the hearing that led to the entry of this order. Indeed, there is no indication that Father received any notice of the relevant proceedings and filings.

In a pro se letter postmarked July 22, 2025, Father tendered an independent request for in-person contact with K.J.C.:

> I was denied access for in-person visitation with my son, [K.J.C.], once again. This is a reoccurring problem I am going through. [Meacham] gave me a good report. Also, my son gave the court permission to visit me in person. However, [the GAL] is denying me access for visitation with my son.
>
> I would like a court ruling for in-person visitation with my son. I have been pressing this issue because I really want to see my son and I think it would be a good idea to have his father in his life. [The GAL's] reasoning for the denial is because she does not believe it is acceptable for a child to visit a prison. However, I have had many in-person visits with my nieces and nephews who are youths and there have been no problems. In fact, they have had a wonderful experience with the visits and it made me happy to connect with them.
>
> I am respectfully requesting a court ruling from this court so I can be granted in-person visits with my son.

Letter, 7/22/2025, at 1 (unpaginated).

On August 4, 2025, the trial court filed an order responding to Father's letter. Therein, the trial court provided Father with a copy of its April 14, 2025 order for the first time. *See* Trial Court Order, 8/4/2025, ¶ 1. The August 4, 2025 order contained the following advisement: "All parties are reminded that a [f]inal [c]ustody [h]earing remains scheduled for … August 25, 2025[.]" *Id.* ¶ 2. Finally, the trial court directed that Father be provided with copies of "all future [o]rders and notices" issued in these cases. *Id.* ¶ 3. The trial court did not address Father's request for in-person contact with K.J.C. further in this order.

On August 12, 2025, Meacham filed a memorandum reporting that K.J.C. "continues to express a desire to visit with his father at the correctional facility" and indicating Meacham's belief that K.J.C. was "emotionally" capable of handling in-person visits and was eager for them to begin. Memorandum, 8/12/2025, at 2. Meacham also indicated his understanding that Father's request for in-person contact "would be again addressed" at the upcoming hearing. *Id.*

The final custody hearing occurred as scheduled on August 25, 2025, at which time K.J.C. was eight years old. It is unclear whether the trial court considered any testimony or evidence. Instead, it entered a final custody order based upon the mutual "agreement" of the parties that appeared at the hearing, which did not include Father. Trial Court Order, 8/25/2025, at 1.

This order awarded Paternal Grandmother primary physical custody and shared legal custody with Maternal Grandfather. *See id.* ¶¶ 1-2. It provided Mother and Maternal Grandfather partial physical custody "every Sunday from 12:00 noon until 7:00 p.m." with one additional overnight visit per month. *Id.* ¶¶ 3-4. The order directed that "Father's contact with the minor child shall continue by telephone until further [o]rder of this [c]ourt." *Id.* ¶ 5. The order also stated: "This is a [f]inal [o]rder for purposes of appeal." *Id.* ¶ 9.

On September 10, 2025, Father timely filed a single pro se notice of appeal at docket number 369-2022.[7] On September 19, 2025, the trial court ordered him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 26, 2025, Father timely complied.[8] Thereafter, the trial court filed a Rule 1925(a) opinion.

_____

[7] On October 3, 2025, this Court filed an order noting that Father's filing of a single notice of appeal did not comply with *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) (requiring an appellant to file separate notices of appeal from a single order resolving issues arising on more than one lower court docket). We directed Father to file corrected notices of appeal in the trial court pursuant to *Commonwealth v. Young*, 280 A.3d 1049, 1057 (Pa. Super. 2022) and Pa.R.A.P. 902. On October 30, 2025, he filed the corrected notices of appeal in this Court. On November 10, 2025, we consolidated these cases sua sponte.

[8] In children's fast track cases, an appellant is required to file a concise statement of error contemporaneously with the notice of appeal. *See* Pa.R.A.P. 905(a)(2), 1925(a)(2)(i). Father failed to do so. An oversight of this nature does not divest this Court of jurisdiction, but merely results in a "defective notice of appeal" that must be addressed on a "case-by-case" basis. *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009). "'The extreme action of dismissal should be imposed by an appellate court sparingly, and clearly
*(Footnote Continued Next Page)*

- 11 -

In his brief on appeal, Father has raised one issue for our consideration: "Should Father be permitted to have in person visitation with the child during Father's incarceration at SCI Fayette?"  Father's Brief at 4.  Although framed as a single argument, there are two distinct prongs to Father's arguments: (1) the trial court violated his due process rights; and (2) the relevant facts and factors favored allowing K.J.C. to visit Father in prison.  *See id.* at 7-9.

Our general standard and scope of review of custody decisions are well established:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

---

would not be appropriate when there has been substantial compliance with the rules'" and no party has "'suffered prejudice.'"  *Id.* (quoting *Stout v. Universal Underwriters Ins. Co.*, 421 A.2d 1047, 1049 (Pa. 1980)).  This Court has declined to quash appeals where an appellant failed to comply with these directives but subsequently complied with an order of court directing to the filing of a concise statement.  *See In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1286 (Pa. Super. 2011) (citing *K.T.E.L.*, 983 A.2d at 747-48).  Thus, we decline to quash and will address the merits of Father's appeal.  *See id.*

With respect to Father's due process challenge, however, our standard of review is much broader: "'A question regarding whether a due process violation occurred is a question of law for which the standard of review is de novo and the scope of review is plenary.'" *Id.* (citation omitted). In sharp contrast to our deferential abuse of discretion review, "[d]e novo review entails, as the term suggests, full consideration of the case anew. The reviewing body is in effect substituted for the prior decision maker and redecides the case." *Rebert v. Rebert*, 757 A.2d 981, 984 (Pa. Super. 2000).

With these basic legal principles in mind, we begin with Father's claim that the trial court violated his due process rights. *See* Father's Brief at 8-9. He argues the trial court largely "ignored" his requests for in-person visitation with K.J.C. *Id.* ("The court barely acknowledged that Father requested in person visitation and appears to place blame on Father for not being present for the hearing in this matter."). He further asserts that he must "'be afforded a hearing in which both parties are permitted to establish the relative benefits or harm to the child occasioned by visitation with Father while in prison.'" *Id.* at 9 (quoting *Etter v. Rose*, 684 A.2d 1092, 1093 (Pa. Super. 1996)). Therefore, Father requests that we remand this case "so the trial court can properly consider if prison visitation is appropriate." *Id.* at 9.

The trial court has taken the position that Father "is not a party" to these proceedings involving custody of his child. Trial Court Opinion, 9/29/2025, at 2. While acknowledging that it "addressed Father's contact with the child" in

- 13 -

its rulings, the trial court maintains "Father has never requested to be a party or to intervene."  *Id.* at 3.  The trial court also emphasizes that the orders addressing Father's contact with K.J.C. were entered pursuant to "the agreement of the parties."  *Id.*; *see also* Trial Court Order, 8/25/2025, at 1 (consent order); Trial Court Order, 4/14/2025, ¶ 1 (same).  The court's discussion implies that it was unaware of Father's requests for contact with K.J.C., including the most recent one postmarked on July 22, 2025:

> The [c]ourt, in reviewing the file to complete this [o]pinion, noted a document filed in the Office of the Prothonotary of Clinton County on July 25, 2025, which document was authored by Father and dated July 20, 2025.  In this document, Father requests in-person visits with the child at the State Correctional Institution.  This [c]ourt would schedule a hearing on this request, but Father has filed an [a]ppeal to the Superior Court.

Trial Court Opinion, 9/29/2025, at 3.  The trial court also noted:  "Father was not present at the August 25, 2025 proceeding and did not request to participate by Advanced Communication Technology (ACT)."[9]  *Id.*  The court requests that this Court "remand" the case so that it can address Father's request for in-person contact with his child.[10]  *See id.* at 3-4.

 As discussed infra, we grant the requests for remand advanced by Father and the trial court.  Respectfully, however, we must first register our

---

[9] "Advanced communication technology" includes "systems providing for two-way simultaneous communication of image and sound; close-circuit television; telephone and facsimile equipment; and electronic mail."  *In re General Statewide Judicial Emergency*, 229 A.3d 229, 230 (Pa. 2020).

[10] No other party has filed a brief, or otherwise participated, in this appeal.

- 14 -

concern regarding the trial court's minimization of Father's legal right to participate in these proceedings. There is no indication in the certified record that Father's parentage of K.J.C. is disputed or questionable. As a matter of statute, therefore, he enjoys broad standing as a **parent** under Pennsylvania law to seek **any form** of custody of K.J.C. **See** 23 Pa.C.S. § 5324(1).

Our precedent further clarifies that the request of an incarcerated parent, like Father, for "some form of contact (including visitation and telephonic communication) with a child pursuant to the [Child Custody Act ("the Act")] constitutes a request for an award of 'supervised physical custody[.]'"[11] **K.B. v. M.F.**, 247 A.3d 1146, 1154 (Pa. Super. 2021) (quoting **S.T.**, 192 A.3d at 1165); **see also** 23 Pa.C.S. § 5322(a) (defining "[s]upervised physical custody" as " [c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights."). As detailed above, the certified record reflects that Father submitted three requests for supervised physical custody of K.J.C. in June 2023, July 2024,

---

[11] Father's requests for supervised physical custody are often referred to as requests for "visitation" in the certified record. As this Court has explained, the Act "no longer identifies visitation as a specific form of child custody and equates the term with partial physical custody, shared physical custody, or supervised physical custody." **M.G. v. L.D.**, 155 A.3d 1083, 1089 n.10 (Pa. Super. 2017). Thus, Pennsylvania law "no longer provides a statutory basis to seek visitation." **S.T.**, 192 A.3d at 1165.

and July 2025, respectively. *See* Letter, 7/22/2025, at 1 (unpaginated); Trial Court Order, 7/19/2024, at 3 (unpaginated); Memorandum, 7/14/2023, at 1.

Based upon this procedural posture, we reject the trial court's suggestion that Father was not a party to these proceedings. It is beyond cavil that Father possessed standing, and availed himself of that standing, by submitting multiple requests for supervised physical custody of K.J.C. We further emphasize that the trial court's suggestion regarding Father's party status is belied by the trial court dockets attached to Father's notices of appeal, wherein he is identified as a party defendant. *See* Notice of Appeal, 9/10/2025, at 3 (unpaginated) (identifying Father as a pro se defendant); Amended Notice of Appeal, 10/30/2025, at 3 (unpaginated) (same).

We are also stunned and dismayed by the trial court's attempts to disclaim awareness of Father's requests for contact with K.J.C. This is readily belied by the trial court's own filings. Specifically, the trial court acknowledged Father's first request for supervised physical custody in June 2023 by issuing an order directing Meacham to address the issue. *See* Memorandum, 7/14/2023, at 1. Similarly, Father's second request in July 2024 prompted the trial court to enter multiple orders directing Meacham, again, to address the issue. *See* Trial Court Order, 7/30/2024, at 1 (unpaginated); Trial Court Order, 7/19/2024, ¶ 2. Finally, Father's third request in July 2025 led the trial court to file its August 4, 2025 order. *See* Trial Court Order, 8/4/2025, ¶¶ 1-3. In fact, the trial court addressed Father's third request in its final custody

order forming the basis for the instant appeal. *See* Trial Court Order, 8/25/2025, ¶ 5.

Our review leads us to conclude that the trial court was well aware of Father's requests for supervised physical custody. Rather than a lack of knowledge, it is apparent to this Court that trial court failed to treat Father's requests for supervised physical custody with appropriate gravity. It is axiomatic that, in custody proceedings, "parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child." *S.T.*, 192 A.3d at 1160 (some citations omitted) (citing U.S. CONST., Amends. 5, 14). "Due process must be afforded to parents to safeguard these constitutional rights." *Id.* at 1161.

> This Court has delineated these basic protections, as follows:
>
> Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as … a parent's custody of her child. **It is well settled that procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.** Due process is flexible and calls for such procedural protections as the situation demands.

*Id.* (citations and quotation marks omitted; emphasis added). Furthermore,

> [b]oth notice and an opportunity to be heard must be afforded **at a meaningful time in a meaningful manner.** As previous panels have explained: notice in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment.

*Everett v. Parker*, 889 A.2d 578, 580 (Pa. Super. 2005) (citations and quotation marks omitted; emphasis added).

With respect to the requirement of notice, the trial court arguably afforded Father notice of the final custody hearing. *See* Trial Court Order, 8/4/2025, ¶ 2 ("All parties are reminded that a [f]inal [c]ustody [h]earing remains scheduled for … August 25, 2025[.]"). Other than apprising Father that the hearing was scheduled, however, the court made no attempt to inform Father of his right to request in-person attendance at the hearing. Specifically, Pennsylvania law requires that an incarcerated parent receive "notice of their right to request that they be present at the hearing, by means of a writ of habeas corpus ad testificandum."[12] *S.T.*, 192 A.3d at 1162 (citations omitted); *see also Vanaman v. Cowgill*, 526 A.2d 1226, 1227 (Pa. Super. 1987) (same). Among the limited court filings with which he was actually provided, Father never received any advisement regarding his right to submit a habeas petition to secure his in-person appearance. This oversight, alone, constitutes reversible error.[13] *See S.T.*, 192 A.3d at 1162.

_____

[12] For reference, "[t]he purpose of a writ of habeas corpus ad testificandum is to bring a prisoner to court to testify." *Salemo v. Salemo*, 554 A.2d 563, 564 (Pa. Super. 1989).

[13] It is within a trial court's discretion to grant or deny a writ for habeas corpus ad testificandum. *See S.T.*, 192 A.3d at 1162. We also acknowledge that "incarcerated parents [do] not have an absolute right to be physically present" at custody hearings. *Id.* at 1163. Where a trial court fails to provide the required notice, however, the arguable merits of a litigant's request for habeas corpus ad testificandum is immaterial. *See id.*

- 18 -

Relatedly, it is also clear that the trial court denied Father a meaningful opportunity to participate in these proceedings. Father's only opportunity to argue in favor of his request for supervised physical custody was his submission of "informal" statements, i.e, the pro se letters quoted above. In this particular context, we have held that "[a]n 'informal brief' or 'written statement' submitted prior to the [custody] trial cannot possibly equate [to] a meaningful opportunity to be heard under the current state of our substantive and procedural laws." *Id.* at 1164. Instead,

> [d]ue process mandates that an incarcerated parent have a meaningful opportunity to expose **all** the relevant factors in a custody analysis…. [P]arties cannot expose all the relevant factors if they cannot advocate for themselves in real time, i.e., cross-examine witnesses of the other party and respond to arguments.

*Id.* (emphasis in original); *see also Etter*, 684 A.2d at 1093 ("Appellant must … be afforded a hearing in which [the] parties are permitted to establish the relative benefits or harm to the child occasioned by visitation with father while in prison."), *superseded by statute on separate grounds as recognized in* **S.T.**, 192 A.3d at 1168-69. Here, the trial court made no evident effort to afford Father with a meaningful opportunity to participate, i.e., to advocate for himself in real time by examining witnesses and responding to the arguments of other parties.

Overall, we find that the trial court's failure to provide Father with notice and an opportunity to participate are inextricably intertwined here. The ultimate object of requiring trial courts to provide incarcerated parents with

notice of their right to submit a writ of habeas corpus ad testificandum is to afford them an opportunity "to make arrangements for transportation to and presence at the hearing[.]" ***Salemo***, 554 A.2d at 564. While "the [trial] court does not have to grant a writ of habeas corpus ad testificandum, [an] incarcerated parent must still be provided an opportunity to be heard." ***Id.*** This Court has also instructed trial courts adjudicating custody cases involving incarcerated parents to make use of "communication via telephone and video conferencing" where appropriate. ***Id.*** ("In incarceration cases, telephone or video testimony should now be the practice standard, not the exception.").

The trial court suggests that Father was at fault for his exclusion from these proceedings by failing to request to participate in more explicit terms. ***See generally*** Trial Court Opinion, 9/29/2025, at 1-4. This Court, however, has long rejected this argument:

> The trial court bottomed its action on appellant's failure … to request a continuance of the hearing after having received proper and sufficient notice of its impending occurrence. … [T]he court found that … equity does not demand that the court allow [the parent] to effectively ignore notice of a scheduled custody proceeding.
>
> This principle, while perfectly sound in regard to persons at liberty to protect their own interests, requires considerable revision in the context of this and similar cases. **The fact of appellant's incarceration places an obligation on the court to safeguard his due process rights, a responsibility here ignored.**

***Vanaman***, 526 A.2d at 1227 (emphasis added).

Based upon the foregoing, we conclude that the trial court violated Father's due process rights by failing to afford him sufficient notice or an opportunity to be heard on the issue of supervised physical custody of K.J.C. Thus, we must vacate the underlying custody order and remand for further proceedings that are consistent with this writing and our caselaw. *See S.T.*, 192 A.3d at 1171; *Vanaman*, 526 A.2d at 1228.

We now turn to address the second aspect of Father's claim for relief regarding the factors that are relevant to an incarcerated parent's request for supervised physical custody. *See* Father's Brief at 7-8. Specifically, Father alleges that the trial court erred in failing to evince its consideration of the list of factors first identified by this Court in *Etter*. *See id.*

In *Etter*, this Court held as follows regarding requests by incarcerated parents for contact with their children:

> While there is no case law which permits denial of visitation with a parent because of incarceration alone, we believe there is a basis for creation of a presumption, to be rebutted by the prisoner parent, that such visitation is not in the best interest of the child. [An a]ppellant must, however, be afforded a hearing in which both parties are permitted to establish the relative benefits or harm to the child occasioned by visitation with [a parent] while in prison. All relevant factors must be considered, including age of the child, distance and hardship to the child in traveling to the visitation site, the kind of supervision at the visit, identification of the person(s) transporting him and by what means, the effect on the child physically and emotionally, whether the father has and does exhibit a genuine interest in the child, whether he maintained reasonable contacts in the past and any other relevant matters impinging on the child's best interest.

- 21 -

*Etter*, 684 A.2d at 1093. In the decades that have followed the *Etter* decision, however, this Court has recognized that these factors were "assimilated" into the analysis required by 23 Pa.C.S. § 5328(a), specifically, the factor at Section 5328(a)(16). *See S.T.*, 192 A.3d at 1167-68. Furthermore, "the presumption set forth in *Etter* did not survive the amendments to the custody statutes" that resulted in the adoption of section 5328(a). *Id.* at 1168. To the extent that Father maintains the trial court erred in failing to apply the factors identified in *Etter* to the instant case, we find no merit in this aspect of his argument. *See S.T.*, 192 A.3d at 1167-68.

Nonetheless, we must credit the general tenor of Father's argument that the trial court failed to conduct a proper analysis. Indeed, as the trial court acknowledges, it did not conduct **any** analysis since the underlying order was purportedly entered pursuant to the agreement of all parties to this litigation except for Father. *See* Trial Court Order, 8/25/2025, at 1 (indicating the order was entered pursuant to "the agreement of the parties that appeared on this date," which included Paternal Grandmother, Maternal Grandfather, Mother, and the GAL with "Father not appearing"); Trial Court Opinion 9/29/2025, at 3. Thus, "[i]n effect, no record exists" concerning the denial of Father's custody request. *Vanaman*, 526 A.2d at 606.

After Father has been afforded appropriate notice and an opportunity to participate (as dictated above), we further direct the trial court to properly evaluate Father's request for supervised physical custody in the context of the

factors set forth at Section 5328(a), including the **Etter** factors pursuant to section 5328(a)(16). **See S.T.**, 192 A.3d at 1169; 23 Pa.C.S. 5328(a) ("In ordering **any form** of custody, the court shall determine the best interest of the child by considering all relevant factors[.]"). The trial court must also consider "'the nature of the criminal conduct that culminated in [Father's] incarceration, regardless of whether that incarceration is the result of a crime enumerated in section 5329(b).'" **S.T.**, 192 A.3d at 1167 (quoting **M.G.**, 155 A.3d at 1094).

With respect to the ultimate merits of Father's request for supervised physical custody, we express no opinion. As this Court has observed:

> Visitation has been denied where the parent[']s mental or moral deficiencies pose a threat to the child, and appellant may well be unable to sustain his burden of demonstrating that it lies in the child's best interest that he be allowed access. However, this is a matter of proof to be demonstrated by means of evidence, testimonial and otherwise, at a hearing, no presumed.

> In situations such as the one before us, not only are the rights of the prisoner … vulnerable to infringement, but those of the child as well since a determination of the child's best interests must have its basis in information.

**Vanaman**, 526 A.2d at 1127-28.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/24/2026